GIBSON, DUNN & CRUTCHER LLP
JESSICA VALENZUELA, SBN 220934
    jvalenzuela@gibsondunn.com
JEFF LOMBARD, SBN 285371
    jlombard@gibsondunn.com
310 University Avenue
Palo Alto, California  94301-1744
Telephone:    650.849.5300
Facsimile:    650.849.5333

BRIAN M. LUTZ, SBN 255976
    blutz@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, California  94111-3715
Telephone:    415.393.8200
Facsimile:    415.393.8306

*Attorneys for Defendants*
*Amplitude, Inc., Spenser Skates,*
*and Hoang Vuong*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AMPLITUDE, INC., SPENSER SKATES, and HOANG VUONG,<br><br>Defendants. | CASE NO. 3:24-cv-00898-VC<br><br>CLASS ACTION<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date Action Filed: February 14, 2024 |

Gibson, Dunn &
Crutcher LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 19, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard in the Northern District of California, San Francisco Courthouse, Courtroom 4, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Amplitude, Inc. ("Amplitude" or the "Company"), Spenser Skates, and Hoang Vuong (together, the "Individual Defendants," and collectively with Amplitude, "Defendants"), through their undersigned counsel, will, and hereby do, move to dismiss the Amended Complaint for Violations of the Federal Securities Laws (Dkt. 55) ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).  This motion is based on this Notice, the supporting Memorandum of Points and Authorities, the declaration of Jessica Valenzuela and corresponding exhibits, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing.

Defendants seek dismissal of the Complaint with prejudice for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), because Plaintiff Chicago & Vicinity Laborers' District Council Pension Fund ("Plaintiff") fails to plead violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act, under the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Federal Rule of Civil Procedure 9(b).

DATED: July 12, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jessica Valenzuela*
     Jessica Valenzuela

*Attorneys for Defendants Amplitude, Inc.,
Spenser Skates, and Hoang Vuong*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:24-CV-00898-VC

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

**Page**

I.    STATEMENT OF THE ISSUES TO BE DECIDED ................................................ 1

II.   INTRODUCTION ................................................................................................ 1

III.  FACTUAL BACKGROUND ............................................................................... 2

    A.  Amplitude's S-1 Accurately Described The Company's Strong Growth in Prior Years and Its Land and Expand Sales Strategy................................................ 2

    B.  Amplitude's S-1 Disclosed Risks to its Future Success ................................ 3

    C.  Amplitude Disclosed Future Risks Again During a Pre-IPO Investor Day ................. 4

    D.  Amplitude Disclosed That Its Growth Was Slowing After It Went Public ................. 4

IV.   LEGAL FRAMEWORK ...................................................................................... 5

V.    ARGUMENT ....................................................................................................... 5

    A.  Plaintiff Fails to State a Claim Under Section 10(b) and Rule 10b-5 .......................... 5

        1.  The Complaint Fails to Plead an Actionable Misstatement or Omission ......... 5

            a.  Plaintiff Does Not Plead With Particularity Which Statements Were Misleading and Why .......................................................... 6

            b.  Plaintiff Does Not Plead a Material Omission Regarding the Land and Expand Strategy ............................................................ 7

            c.  Plaintiff Does Not Plead a Material Omission Regarding Demand from Customers ............................................................... 9

            d.  The Challenged Statements are Also Non-Actionable as a Matter of Law ........................................................................... 10

        2.  Plaintiff Also Fails to Adequately Allege Scienter ...................................... 12

            a.  Plaintiff's Confidential Witnesses Do Not Establish Scienter ............ 12

            b.  The Stock Sale Allegations Do Not Show Scienter ............................ 13

            c.  The Most Plausible Inference is That Defendants Acted in Good Faith. ...................................................................................... 14

        3.  The Complaint Fails to Plead Loss Causation .............................................. 15

VI.   CONCLUSION .................................................................................................. 15

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
  320 F.3d 940 (9th Cir. 2003)..................................................................................... 13-14

*In re Accuray, Inc. Sec. Litig.*,
  757 F. Supp. 2d 936 (N.D. Cal. 2010) ...........................................................................13

*In re Aqua Metals, Inc. Sec. Litig.*,
  2019 WL 3817849 (N.D. Cal. Aug. 14, 2019)..................................................................7

*In re Bare Escentuals, Inc. Sec. Litig.*,
  745 F. Supp. 2d 1052 (N.D. Cal. 2010) .........................................................................11

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008)...................................................................................... 5-6

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020).................................................................................5, 15

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 1006 (9th Cir. 2002)......................................................................................9

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017)........................................................................................11

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1069 (N.D. Cal. 2012) ...................................................................13, 14

*In re ECOtality, Inc. Sec. Litig.*,
  2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) ................................................................7

*Fadia v. FireEye, Inc.*,
  2016 WL 6679806 (N.D. Cal. Nov. 14, 2016)...............................................................14

*Gammel v. Hewlett-Packard Co.*,
  905 F. Supp. 2d 1052 (C.D. Cal. 2012) ...........................................................................8

*Hunt v. Bloom Energy Corp.*,
  2021 WL 4461171 (N.D. Cal. Sept. 29, 2021) ...............................................................13

*In re Intel Corp. Sec. Litig.*,
  2019 WL 1427660 (N.D. Cal. Mar. 29, 2019)........................................................... 11-12

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
  2018 WL 4181954 (N.D. Cal. Aug. 31, 2018)..................................................................7

*In re JDS Uniphase Corp. Sec. Litig.*,
  2003 WL 26615705 (N.D. Cal. Nov. 3, 2003).................................................................14

Gibson, Dunn &
Crutcher LLP

ii

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Lamartina v. VMware, Inc.*,
  2021 WL 4133851 (N.D. Cal. Sept. 10, 2021) ...............................................................14

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1037 (9th Cir. 2002)........................................................................................13

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016)........................................................................................15

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014)............................................................................................5

*Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*,
  39 F.4th 1092 (9th Cir. 2022) ........................................................................................11

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
  601 U.S. 257 (2024)..........................................................................................................5

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)........................................................................................................ 7-8

*Mazzaferro v. Aruba Networks Inc.*,
  2014 WL 12680773 (N.D. Cal. Aug. 1, 2014)..................................................................8

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008)..............................................................................6, 12, 14

*In re Nektar Therapeutics Sec. Litig.*,
  34 F.4th 828 (9th Cir. 2022) ..........................................................................................13

*Nguyen v. Endologix, Inc.*,
  962 F.3d 416 (9th Cir. 2020)......................................................................................8, 13

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014)........................................................................................15

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015)........................................................................................................11

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014)........................................................................................12

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021)........................................................................................12

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012)............................................................................................5

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:24-CV-00898-VC

**TABLE OF AUTHORITIES**
(continued)

**Page**

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
  485 F. Supp. 3d 1113 (N.D. Cal. 2020) ...................................................................................8

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2017) ............................................................................ 12-13

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999)..................................................................................................14

*In re Splash Tech. Holdings., Inc. Sec. Litig.*,
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) .................................................................................12

*In re Stitch Fix, Inc. Sec. Litig.*,
  2020 WL 5847506 (N.D. Cal. Sept. 30, 2020) .......................................................................7

*In re Syntex Corp. Sec. Litig.*,
  855 F. Supp. 1086 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996).............................6

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ...............................................................................................................14

*In re Twitter, Inc. Sec. Litig.*,
  506 F. Supp. 3d 867 (N.D. Cal. 2020) ...............................................................................5, 11

*Xiaojiao Lu v. Align Tech., Inc.*,
  417 F. Supp. 3d 1266 (N.D. Cal. 2019) ..................................................................................9

*Yaron v. Intersect ENT, Inc.*,
  2020 WL 6750568 (N.D. Cal. June 19, 2020) .......................................................................15

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009)..................................................................................5, 8, 12, 14

**Statutes**

15 U.S.C. § 78u-4(b).................................................................................................................5

15 U.S.C. § 78u-4(b)(1)(B).......................................................................................................6

15 U.S.C. § 78u-4(b)(2)(A).....................................................................................................12

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:24-CV-00898-VC

## I.    STATEMENT OF THE ISSUES TO BE DECIDED

1.    Whether Plaintiff's claim under Section 10(b) of the Exchange Act should be dismissed for failure to plead falsity, scienter, and loss causation.

2.    Whether Plaintiff's claim under Sections 20(a) of the Exchange Act should be dismissed for failure to plead a primary violation of the Exchange Act.

## II.    INTRODUCTION

Plaintiff filed this Section 10(b) action based solely on a drop in Amplitude, Inc.'s stock price after the Company shared its financial outlook for 2022.  But Plaintiff identifies no statements by Amplitude that were untrue, and each of the disclosures it implies were omitted were in fact made.  This is precisely the sort of case that the Private Securities Litigation Reform Act was designed to prevent.  Plaintiff fails to adequately allege three required elements of a Section 10(b) claim under the PSLRA and Federal Rule of Civil Procedure 9(b):  falsity, scienter, and loss causation.

**Falsity.**  The Complaint does not allege that Defendants made any specific false statements, and instead suggests Amplitude made material omissions.  To support this theory, Plaintiff alleges that Amplitude's accurate statements regarding its *past* performance were misleading because Amplitude supposedly failed to disclose that its sales strategy would not result in immediate gains and its prior growth was driven by COVID-19 tailwinds and early customer renewals.  But the Complaint is devoid of any facts to support this assertion.  And, in fact, it reveals that the statements Plaintiff challenges about the Company's sales strategy and customer growth *were* true.  Nor is there any factual support for Plaintiff's claim that Amplitude omitted material facts about its sales strategy and future growth.  Amplitude openly disclosed that its sales strategy could take years to bear fruit from any particular customer, and Amplitude was transparent about the reasons for its prior growth—explicitly including COVID-19 tailwinds and early customer renewals—which it never implied were somehow destined to continue.  In any event, most of the challenged statements cannot form the basis of a securities fraud claim for many other reasons, including because they are inactionable opinions, puffery and/or protected forward-looking statements.

**Scienter.**  The Complaint also fails to plead a plausible inference of intent to defraud.  The Complaint relies on allegations attributed to two former Amplitude employees, but neither has any

first-hand knowledge of what the Individual Defendants knew or didn't know, so they are irrelevant to scienter.  Plaintiff also points to stock sales by the Individual Defendants and other insiders, purportedly to show motive.  But stock sales alone are never enough to plead scienter; they may only bolster *other* scienter allegations (which are absent here) where they are unusual or suspicious.  Here, the stock sales are neither:  the sales took place when insiders would be expected to sell (in a direct listing IPO); the Individual Defendants sold a small percentage of their total holdings (~7% and ~17%, respectively); and there are no allegations that Defendants took advantage of material non-public information.

**Loss Causation.**  Finally, Plaintiff fails to plead loss causation.  Amplitude's disclosure of its revised, forward-looking financial outlook for 2022 did not reveal any purported "fraud" about the Company's statements regarding its prior performance and growth in 2021.

The Complaint should be dismissed in its entirety.

### III.    FACTUAL BACKGROUND[1]

Amplitude sells digital optimization software that provides businesses with insights into consumers' behavior on digital platforms or "apps."  ¶ 3.  Spenser Skates co-founded Amplitude in 2012 and serves as the Company's Chief Executive Officer.  ¶ 26.  During the relevant period, Huong Vuong served as Amplitude's Chief Financial Officer.  ¶ 27.

### A.    Amplitude's S-1 Accurately Described The Company's Strong Growth in Prior Years and Its Land and Expand Sales Strategy

On August 30, 2021, Amplitude filed a Form S-1 Registration Statement in connection with its planned direct listing public offering.  ¶ 4.  Amplitude's S-1 accurately described the Company's strong customer growth over the preceding two years and its land and expand sales strategy, which is commonly employed by companies selling software-as-a-service products and seeks to land new customers with an initial use case and then expand the relationship over time.  *See* ¶ 6; Ex. 1 at 10, 66. Amplitude further disclosed the specific metrics that it used to track growth, including metrics used to track new customers and its retention and expansion of existing customers.

As the S-1 explained, Amplitude's sales were growing but that growth was largely due to a

---

[1] Citations to "¶__" or "¶¶__" refer to paragraphs of the Complaint.  Citations to "Ex.__" are to the Declaration of Jessica Valenzuela filed concurrently herewith.  Unless stated otherwise, all emphasis is added and all internal citations and quotations are omitted.

relatively small number of customers expanding their purchases:  between December 31, 2020 and June 30, 2021, Amplitude "had over 1,000 and 1,200 paying customers, respectively, representing an increase of 41% and 51% year-over-year." Ex. 1 at 67.  It also "had 262 and 311 customers . . . that each represented greater than $100,000 in [annual recurring revenue or ARR], representing a 26% and 40% increase year-over-year" and "15 and 22 customers . . . that each represented greater than $1 million in ARR, up 36% and 69% year-over-year." *Id.* at 67–68.  Finally, the Company disclosed that its net retention rate or NRR, which tracks ARR from existing customers over the trailing 12 months to reflect existing customer expansion, was 119%. *Id.* at 67.  The Complaint does not allege that any of these metrics were false or misleading.

**B.     Amplitude's S-1 Disclosed Risks to its Future Success**

Despite its strong growth trajectory, the Company was careful in the S-1 to make clear that "past results may not be indicative of [its] future performance." *Id.* at 20.  Indeed, the S-1 provided detailed information about the myriad risks that could impact Amplitude's performance, making clear there was no guarantee the Company would be successful in the future.  Among other things, it disclosed that:

- The Company's "business relied on [its] current customers renewing their subscriptions and purchasing additional subscriptions . . . [and] attracting new customers," *id.* at 12;

- The Company's "revenue growth rate may decline," *id.* at 19;

- "[C]ustomer retention and expansion and the rate at which we attract new customers may decline or fluctuate as a result of a number of factors," *id.* at 20; and

- The Company expected "fluctuations in our financial results, making it difficult to project future results," *id.* at 12.

Amplitude also warned that it had benefited from the COVID-19 pandemic and the future impact of the pandemic was uncertain.  It told investors: "Our customer prospects and our existing customers may experience slowdowns in their businesses, which in turn may result in reduced demand for our [products], lengthening of sales cycles, loss of customers, and difficulties in collections." Ex. 1 at 25.  Amplitude went on to explain that it was "not possible . . . to predict the duration and extent of the impact that COVID-19 could have on . . . our business," and "as stay-at-home orders and other quarantine and isolation measures are lifted, the amount of time that consumers spend interacting with

Gibson, Dunn & Crutcher LLP

3

digital products may normalize or decline, which could slow customer demand for our [products]." *Id.* at 26.  Plaintiff does not claim any of those disclosures were false or misleading.

**C.    Amplitude Disclosed Future Risks Again During a Pre-IPO Investor Day**

Two weeks later, Amplitude emphasized risks to its future success again during its Investor Day conference which was held to provide potential investors with a deeper understanding of the Company's business ahead of its direct listing.  ¶ 36; Ex. 3 at 1.  Vuong cautioned explicitly that the Company did not "know exactly" when Amplitude's "land and expand" sales strategy would bear fruit from any particular customer, saying "it depends . . . on the [client]" and warned it could "happen over [] months or years."  Ex. 3 at 30–31.  He added that "sometimes you can see people expanding to that $1 million in a year. *Sometimes it may take them five years*."  *Id.* at 30.

The Company went public through a direct listing on September 28, 2021.  ¶ 14.  Unlike a traditional IPO, which is underwritten by an investment bank, in a direct listing, company insiders sell their shares directly into the public markets.  *See* Ex. 2 at 1, 2-3.

**D.    Amplitude Disclosed That Its Growth Was Slowing After It Went Public**

After it went public, the Company continued to grow, but it disclosed that it expected its future revenue growth to slow.  On November 9, 2021, Amplitude released financial results for Q3 2021, disclosing 72% quarterly revenue growth, NRR of 121% compared to 119% for Q3 2020, and 54% growth in paying customers year-over-year.  ¶ 57; Ex. 5 at 1.  During an earnings call the same day, Vuong disclosed that Q4 revenue was expected to grow 55% annually, and opined that the Company was "well-positioned to grow 2022 revenue over 40%."  Ex. 6 at 7, 8.  Analysts immediately picked up on these disclosures, which reflected a decline in revenue growth from prior periods, noting that Amplitude's Q4 revenue guidance showed a "significant deceleration" in the pace of growth, Ex. 7 at 1, to "low-single digit, which is materially below the strong double-digit sequential growth" from "the last several quarters."  Ex. 6 at 13.

On February 16, 2022, Amplitude disclosed that its projected revenue growth for the full year 2022 would be 35%–40%.  ¶ 81.  Investors reacted to the slowing growth, and Amplitude's stock dropped more than $24 on February 17, 2022, closing "down nearly 59%."  ¶ 85.

## IV.    LEGAL FRAMEWORK

To state a Section 10(b) claim, the Complaint must allege facts sufficient to show (1) a material misrepresentation or omission (*i.e.*, falsity); (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) on which Plaintiff relied; (5) economic loss; and (6) loss causation. *Loos v. Immersion Corp.*, 762 F.3d 880, 886–87 (9th Cir. 2014). Such claims must meet the PSLRA's heightened pleading standards, which require plaintiffs to "plead with particularity both falsity and scienter," *In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 878–79 (N.D. Cal. 2020), as well as loss causation, *see In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 791 (9th Cir. 2020). A complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," and, with respect to each alleged misstatement, must also "state with particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b). Plaintiff does not satisfy the PSLRA's "exacting pleading requirements," and therefore the Court must dismiss the Complaint. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990-91 (9th Cir. 2009).

## V.    ARGUMENT

### A.    Plaintiff Fails to State a Claim Under Section 10(b) and Rule 10b-5

Plaintiff fails to adequately plead falsity, scienter, and loss causation. The Complaint does not allege any false statements, and instead relies on an omission-based theory, but each of the purportedly omitted facts were clearly disclosed on multiple occasions. The Complaint contains no particularized allegations supporting the requisite inference of fraudulent intent or establishing loss causation. The Complaint can be dismissed on any of these grounds.

#### 1.    The Complaint Fails to Plead an Actionable Misstatement or Omission

To adequately plead falsity, a plaintiff must allege that the defendant made an affirmative misstatement or a material omission that renders a statement Defendants made misleading. *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 263 (2024) ("Rule 10b–5(b) does not proscribe pure omissions. The Rule prohibits omitting material facts necessary to make the 'statements made . . . not misleading.'"); *see also In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876–77, 880 n.8 (9th Cir. 2012). A statement is only "misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Berson*

Gibson, Dunn & Crutcher LLP

*v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (cleaned up).

The Complaint appears to challenge 21 different statements about the Company's land and expand strategy and customer growth (set forth in full in Appendix A) as misleading on the basis that Amplitude purportedly failed to disclose that:  (1) "Amplitude's land and expand strategy was years away from significantly accelerating the expansion of revenue among its legacy or its newer clients"; (2) "Amplitude was not continuing to benefit from COVID-19 tailwinds, nor was it continuing to see accelerating growth and strong demand momentum from customers"; and (3) "the magnitude of the impact of early customer renewals on reportedly strong 2Q21 financial results substantially bolstered the appearance of strong growth and demand and hurt expected revenue that would have materialized in future quarters, including in FY22."  ¶ 12; *see also* ¶¶ 45, 67, 77.  However, all of the challenged statements were ***true*** and there were no material omissions.  Indeed, the Complaint is devoid of any factual support showing the omission of any "fact" that renders any challenged statement misleading when made and Amplitude clearly disclosed on numerous occasions the inherent internal and external risks to its business.  Accordingly, Plaintiff fails to satisfy the first element of a Section 10(b) claim to plead a false or misleading statement.[2]

### a.    Plaintiff Does Not Plead With Particularity Which Statements Were Misleading and Why

As a threshold matter, the Complaint employs impermissible puzzle pleading.  Plaintiff has the burden to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B).  Simply pointing, as Plaintiff does here, to "[a] litany of alleged false statements . . . does not meet this standard."  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008); *see also* ¶¶ 10, 36–77; App'x Statement Nos. 1-20.  Plaintiff's trick to bold text does not solve this deficiency, as Plaintiff admits the bolded language is used "primarily" to identify misleading statements but "is also used to identify statements that tend to evidence . . . materiality." ¶ 10, n.2.  This classic pleading failure makes it impossible for Defendants

---

[2] Plaintiff appears to challenge a third-party analyst statement. *See* ¶ 67 (citing ¶ 64); App'x Statement No. 21.  Defendants cannot be liable for this statement because the Complaint contains no allegations that Amplitude "adopted, endorsed or sufficiently entangled itself with" the statement.  *In re Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086, 1097 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996).

Gibson, Dunn & Crutcher LLP

to identify and address the specific statements Plaintiff alleges were misleading. *See In re Aqua Metals, Inc. Sec. Litig.*, 2019 WL 3817849, at \*8 (N.D. Cal. Aug. 14, 2019) ("[M]erely bolding and italicizing swaths of text does not assist the Court in determining which statements are allegedly misleading and why . . . ."); *In re ECOtality, Inc. Sec. Litig.*, 2014 WL 4634280, at \*3 (N.D. Cal. Sept. 16, 2014) ("The Court will not attempt to divine Plaintiffs' intentions . . . ."). "[C]ourts have repeatedly lamented plaintiffs' counsels' tendency to place the burden on the reader to sort out the [allegedly false] statements and match them with the corresponding adverse facts to solve the 'puzzle' of interpreting the plaintiffs' claims." *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 2018 WL 4181954, at \*6 (N.D. Cal. Aug. 31, 2018) (cleaned up). The Complaint should be dismissed on this basis alone.

### b.    Plaintiff Does Not Plead a Material Omission Regarding the Land and Expand Strategy

Plaintiff's theory seems to be that the Company's statements regarding Amplitude's land and expand strategy (*see* App'x Statements Nos. 1–6, 16–19) were misleading because the Company purportedly failed to disclose that this "strategy was years away from significantly accelerating the expansion of revenue among its legacy or its newer clients." *See* ¶¶ 12(a), 45(a), 67(a), 77(a). But none of the statements are misleading, and all of the allegedly omitted information was disclosed.

*First*, except for the challenged financial guidance (which, as discussed below, is immunized by the PSLRA's safe harbor for forward-looking statements), all of the challenged statements regarding the Company's experience with landing and expanding clients are about Amplitude's *past* performance. *See, e.g.*, ¶ 41 ("We also *had* a significant increase in ARR commitments from existing customers."); *see also* App'x Statement Nos. 1–6, 12, 16, 18. These statements are "an observation about what [Amplitude's previous] results demonstrate, and not a contemporaneous note about how the company was doing as of the time of the statement." *In re Stitch Fix, Inc. Sec. Litig.*, 2020 WL 5847506, at \*5 (N.D. Cal. Sept. 30, 2020). Plaintiff does not allege that the Company's historic performance was misstated in any way, or that *any* of the business metrics disclosed by Amplitude to illustrate the *past* success of its sales strategy, including customer growth, ARR, or NRR, were false or misleading. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 43 (2011) (whether a defendant made a material misstatement "requires consideration of the source, content, and context"); *SEB Inv.*

Gibson, Dunn & Crutcher LLP

*Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1126 (N.D. Cal. 2020) ("Plaintiff may not simply 'cherry-pick[] portions of Defendants' statements'" and cannot "selectively ignore[] [Defendants'] statement and the surrounding context.").

Instead, Plaintiff appears to rely on former employee ("FE") allegations to show that statements about the land and expand strategy were misleading. For example, FE1 claims that "by the middle of November [2021], there was significant partial churn," ¶ 68(a), and FE2 claims that "by November 2021, [COVID-19] tailwinds had transitioned to headwinds, and it became harder for Amplitude's clients to get budgets approved for incremental expenditure," ¶ 68(c).[3] These vague musings are "short on the facts." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416 (9th Cir. 2020). They are also irrelevant to whether Defendants' statements were false and misleading because neither FE provides any information that contradicts the Company's statements about the historical success of the land and expand strategy. Instead, they speak only to the Company's purported performance *in November 2021* (*i.e.*, during Q4) which says nothing about Defendants' performance during Q2 and Q3. *See Mazzaferro v. Aruba Networks Inc.*, 2014 WL 12680773, at *1 (N.D. Cal. Aug. 1, 2014) (confidential witness statements "would not, if true, demonstrate that Aruba's statements were false or misleading").

**Second**, there was no material omission. The Company warned investors in the S-1 that "customer retention and expansion and the rate at which we attract new customers may decline," in the future "as a result of a number of factors." Ex. 1 at 20. The Company also repeatedly disclosed that the benefits of the land and expand strategy would not be immediate and results varied by customer. For example, on September 14, 2021, Skates stated that for one client, the land and expand strategy took "a six year period." ¶ 36; *see also* Ex. 3 at 10–20 (providing examples of clients including a client who took five years to expand); Ex. 6 at 5–6 (describing various customer timeframes for expanding). Vuong also cautioned that the Company did not "know exactly" when the land and expand strategy

---

[3] The FE allegations should be disregarded because the Complaint does not allege "sufficient detail about [their] position[s] . . . to provide a basis for attributing the facts reported . . . to the witness' personal knowledge." *Zucco*, 552 F.3d at 995. The Complaint does not explain how either FE1 or FE2—who are merely described as a "Director of Enterprise Success" and "Client Account executive"—would have any knowledge of the Company's customers or growth *overall*. ¶ 68; *see Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1073 (C.D. Cal. 2012) (plaintiffs "do not describe CW4's specific responsibilities").

8

Gibson, Dunn &
Crutcher LLP

would bear fruit from any particular customer, noting that "it depends . . . on the company," and some customers may "expand[] to that $1 million in a year," whereas for others "it may take them five years." Ex. 3 at 30–31.  Plaintiffs have not—and cannot—plausibly allege a material omission regarding the Company's land and expand strategy.  *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (omission actionable only if they "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists").

#### c. Plaintiff Does Not Plead a Material Omission Regarding Demand from Customers

Plaintiff also alleges that statements regarding customer demand (*see* App'x Statements Nos. 7–19) were false and misleading because the Company supposedly failed to disclose that "Amplitude was not continuing to benefit from COVID-19 tailwinds," and "the magnitude of the impact of early customer renewals on reportedly strong 2Q21 financial results substantially bolstered the appearance of strong growth and demand and hurt expected revenue that would have materialized in future quarters."  ¶ 12(b)-(c).  Again, Plaintiff fails to allege any facts showing that these statements were misleading and ignores that Defendants disclosed all of the material facts they claim were omitted.

*First*, the Complaint contains no factual allegations showing any statement was misleading when made.  Again, Plaintiff only challenges statements about *past* performance.  *See, e.g.*, ¶ 38 ("There are definitely a bunch of customers that *saw* the positive tailwind of digital adoption"); ¶ 59 ("We *had* a solid third quarter, with accelerated revenue growth").  But Plaintiff does not allege that prior growth was not achieved or that any metrics disclosed to support the truth of these statements were misstated or inaccurate in any way.  For example, Plaintiff challenges Vuong's disclosure on September 14, 2021, that "we continue to see strong customer momentum" in the number of paying customers from 2019 to 2021, but Plaintiff ignores—and does not dispute—that Amplitude provided the facts to support the accuracy of that statement by disclosing it had experienced "41% customer growth in FY20 and 51% customer growth in the first half of FY21." ¶ 37.  "By cherry-picking portions of Defendants' statements . . . Plaintiff asks the Court to make inferences contradicted by the statements viewed properly as a whole." *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1276 (N.D. Cal. 2019).

Gibson, Dunn & Crutcher LLP

***Second***, the Company disclosed the very information about customer demand that Plaintiff alleges was concealed. Amplitude warned investors in the S-1 that, while it had benefited from the COVID-19 pandemic, it was impossible "to predict the duration and extent of the impact that COVID-19 could have on . . . our business" and that as businesses adjusted to a post-COVID world "the amount of time that consumers spend interacting with digital products may normalize or decline, which could slow customer demand for our [products]." Ex. 1 at 26. The Company also made clear that COVID-associated tailwinds were limited to previous quarters. Vuong told investors in November 2021 that "large expansion in Q2 2021" was "due to the impact of COVID that are contributing to our growth rate." Ex. 6 at 6. And when asked in December 2021 to explain the deceleration in projected revenue growth, Vuong explained the "really large expansion" by a few customers in Q2 "benefited from COVID . . . [which] boosts your Q3 revenue, but then it makes your Q4 revenue and sequentially quarter-over-quarter a tougher comparison." Ex. 9 at 9. This statement—that Q4 revenue would be "a tougher comparison"—communicated to investors that the Company did not expect the same COVID tailwinds to persist. The market understood the Company's disclosures: "[Amplitude] saw an inflection in usage/adoption amid COVID as it provides insights into customer actions across online channels (benefiting 2QF21 with larger expansions/early renewals)." Ex. 10 at 1.

As for renewals, investors knew that growth in prior periods was driven by early renewals and, because that revenue was attributed to prior quarters, future revenues could be impacted. In September 2021, when announcing Q2 earnings, Vuong noted that the Company's growth "was driven in part by . . . some early customer renewals that took place in the quarter." Ex. 4 at 6. And in December 2021, Vuong reaffirmed that customers "kind of renewed and expanded in Q2, [and] some of that probably was unscheduled." Ex. 9 at 3. Again, the market understood these disclosures: "Amplitude has been vocal that 2QF21 in particular benefited from some larger than normal expansion deals and early renewals given the strong demand environment." ¶ 79; *see also* Ex. 10 at 5.

        **d.**      **The Challenged Statements are Also Non-Actionable as a Matter of Law**

The challenged statements cannot establish a securities fraud claim for many other reasons.

***Forward-Looking Statements.***[4] The PSLRA immunizes forward-looking statements from

---

[4] App'x Statements Nos. 10, 16, 19 include forward-looking statements.

Gibson, Dunn &
Crutcher LLP

liability so long as they are either, "accompanied by 'meaningful cautionary statements,' or are 'immaterial,' or were not made 'with actual knowledge' of the falsity or misleading nature of the statement." *Twitter*, 506 F. Supp. 3d at 882.  The Company's projections about its future performance fall squarely within the safe harbor.  *See* ¶¶ 40, 59 (projecting 2022 revenues of 40% or more). Financial guidance "easily meet[s] the definition of a forward-looking statement."  *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1079–80 (N.D. Cal. 2010).  Such guidance is immunized because it was accompanied by meaningful cautionary language.  Among other risks, the S-1 specifically warned that Amplitude's "revenue growth rate may decline over time," and "revenue growth could slow . . . for a number of reasons."  Ex. 1 at 19; *see also* Ex. 4 at 2; Ex. 6 at 2.

**_Opinion._**[5]  Courts typically hold that statements prefaced with phrases like "I think" are non-actionable opinions because they do not "express[] certainty about a thing."  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015).  The Complaint asserts that opinion statements are misleading, such as "I think we feel really great about . . . the story that we're able to tell," ¶ 60, and "we're really excited by the fact that . . . we saw expansion," ¶ 44.  Opinions are actionable only if: (1) the speaker does not honestly hold the stated opinion; (2) it includes an "embedded statement[] of fact" that is false; or (3) it omits facts that are necessary to make the opinion not misleading.  *Omnicare*, 575 U.S. at 184–93 (2015); *accord City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017).  The Complaint does not allege that Individual Defendants did not hold these opinions.  Nor does it identify any embedded statements of fact that are false or any omissions of fact that make these opinions misleading.

**_Corporate Optimism_**.[6]  Statements of corporate optimism are not "objectively verifiable" but, instead, are "vague, generically positive" statements that investors do not rely upon.  *Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1099 (9th Cir. 2022).  Such inactionable puffery here includes phrases using "strong", ¶¶ 10, 37, 40–42, 57, 58, "robust," ¶¶ 10, 38, 41, 71, "great," ¶¶ 10, 38, 40, 60, 63, "good," ¶¶ 57, 62, "absolutely amazing," ¶¶ 10, 39, "solid," ¶¶ 10, 58, 59, or the "team continues to execute well," ¶¶ 10, 59.  *See In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at

---

[5] App'x Statements Nos. 4, 5, 8, 11, and 13–15 are opinions.
[6] App'x Statements Nos. 3, 7–9, 11, and 13–19 are corporate optimism or puffery.

11

Gibson, Dunn & Crutcher LLP

*12 (N.D. Cal. Mar. 29, 2019) (statement that company provided "strong security" nonactionable); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1077 (N.D. Cal. 2001) (phrases such as "better than expected," "robust," "well positioned," "solid," and "improved," were not actionable).

### 2.    Plaintiff Also Fails to Adequately Allege Scienter

The Complaint fails to plead that any Defendant acted with "intent to deceive, manipulate, or defraud." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061–62 (9th Cir. 2014). To plead scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). This is a "high burden," *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021), which requires a showing of "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care," *Zucco*, 552 F.3d at 991. The Complaint does not plead a single fact regarding either Individual Defendant's state of mind. Instead, Plaintiff attempts to raise an indirect inference of scienter from two "confidential witnesses" and stock sales.[7] These allegations do not plead the required strong inference.

### a.    Plaintiff's Confidential Witnesses Do Not Establish Scienter

Plaintiff's reliance on two former employees is fatally deficient. Neither individual is alleged to have communicated or interacted with either Individual Defendant. ¶ 68. To be indicative of scienter, confidential witnesses must provide "first-hand knowledge regarding what the individual defendants knew or did not know." *Intuitive Surgical*, 759 F.3d at 1063. The Complaint contains no such allegations. FE2 says nothing about the Individual Defendants or their knowledge. FE1 says that Skates attended meetings about "high profile customer accounts," ¶ 32, and "was involved with almost any large account that was seeing significant churn," ¶ 68(b), but FE1 is not alleged to have attended any of these meetings and provides no information about what was discussed—much less how anything purportedly discussed at these meetings contradicted Defendants' statements. *See Shenwick v. Twitter,*

---

[7] Plaintiff also cites Defendants' "positions and access to material non-public information," ¶ 29, and that they were "directly involved in the management and day-to-day operations of the Company," ¶ 35. This suggests, at most, a "general awareness of the day-to-day workings of the company's business," which is not enough to allege scienter. *Metzler*, 540 F.3d at 1068; *Intuitive Surgical*, 759 F.3d at 1063 ("[m]ere access to reports containing undisclosed . . . data is insufficient to establish" scienter).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:24-CV-00898-VC

Gibson, Dunn & Crutcher LLP

*Inc.*, 282 F. Supp. 3d 1115, 1149 (N.D. Cal. 2017) (confidential witness allegations insufficient where individual defendant not alleged to be at meetings).  FE1's allegations regarding the system used to forecast customer retention, ¶ 68(b), are conclusory.  Plaintiff does not allege how any information in this system would have provided the Individual Defendants with knowledge that their statements were false or misleading.  *Nguyen*, 962 F.3d at 417 (confidential witness referenced "incident reports," but "complaint does not plead any details about these reports").

FE1 and FE2 are irrelevant to the Individual Defendants' state of mind.  *See In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 837 (9th Cir. 2022) (rejecting "vague" witness allegations).

### b.    The Stock Sale Allegations Do Not Show Scienter

The Complaint points to stock sales by corporate insiders during the Class Period in an attempt to establish motive.  ¶ 78.  However, allegations of motive alone cannot establish scienter, and stock sales only contribute to an inference of scienter where they are "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information."  *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1069 (N.D. Cal. 2012).  Here, the Complaint is silent as to the "undisclosed inside information" Individual Defendants purportedly knew.  And the Complaint fails to plead that any Individual Defendant engaged in "'[u]nusual' or 'suspicious' stock sales."  *Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at *18 (N.D. Cal. Sept. 29, 2021).

The timing of Skates' and Vuong's sales are not suspicious as they largely occurred within the first 72 hours of Amplitude's IPO.  *See* ¶ 78.  Stock sales by insiders in an IPO are typical, especially in a direct listing, like here, where the only shares sold are those held by insiders.  *See, e.g.*, *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 950 (N.D. Cal. 2010) ("All but one of the challenged stock transactions occurred during the IPO. This is not suspicious or unusual.").[8]  Insiders could not sell shares before the Company went public.  *See, e.g.*, *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 940 (9th Cir. 2003) ("[R]estrictions on an insider's

---

[8] Vuong's sales in November 2021, ¶ 70, occurred shortly after the Company's Q3 earnings announcement, ¶ 57, when "[o]fficers of publicly traded companies commonly make stock transactions," and do not create an inference of scienter. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1037 (9th Cir. 2002).

Gibson, Dunn & Crutcher LLP

ability to trade are important in determining whether the trading pattern is suspicious."); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 987–88 (9th Cir. 1999), *superseded by statute on other grounds* (sale of 75% of insider's holdings not suspicious where he "was legally forbidden to trade" before then).    With no prior trading history, Plaintiff cannot plead that Defendants' stock sales "are inconsistent with . . . usual trading patterns" as required in the Ninth Circuit. *Zucco*, 552 F.3d at 1006.

The sales also are not suspicious because Skates and Vuong retained the majority of their holdings.  Plaintiff attempts to evade this issue by pleading only the Defendants' Class A shares and ignoring their Class B shares and exercisable options.  *Compare* ¶ 78, *with* Ex. 2 at 3–4.  This is misleading and improper.  *See, e.g.*, *In re Silicon Graphics Inc.*, 183 F.3d at 986–87 ("Actual stock shares plus exercisable stock options represent the owner's trading potential more accurately than the stock shares alone."); *In re JDS Uniphase Corp. Sec. Litig.*, 2003 WL 26615705, at *7 (N.D. Cal. Nov. 3, 2003) ("[T]he FACC inappropriately excludes vested options when calculating the percentage of their stock holdings that Defendants sold.").  When considering ***all*** stock holdings, Skates sold only ~7% of his total shares, and Vuong sold ~17%.  *See* Ex. 2 at 174-75.  These relatively small percentages are not indicative of scienter.  *Metzler*, 540 F.3d at 1067 (stock sales of "only 37% of [defendant's] total stock holdings during the Class Period" not indicative of scienter); *Fadia v. FireEye, Inc.*, 2016 WL 6679806, at *14 (N.D. Cal. Nov. 14, 2016) (stock sales of 17.6%, 8.7%, and 15% of holdings not indicative of scienter).

The Complaint also cites stock sales by non-defendants.  *See* ¶¶ 14, 76, 78.  These allegations are irrelevant.  The Complaint contains *no* "allegations explaining why those non-defendants' sales are related to defendants' scienter."  *Lamartina v. VMware, Inc.*, 2021 WL 4133851, at *13 (N.D. Cal. Sept. 10, 2021).

> **c.    The Most Plausible Inference is That Defendants Acted in Good Faith.**

A complaint satisfies the PSLRA only if the inference of scienter is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007).  "Taken as a whole," Plaintiff's allegations "fail to give rise to a strong inference of scienter in light of competing innocent inferences."  *Juniper*, 880 F. Supp. 2d at 1069.  Here, the most plausible inference is that the Company believed what it told investors because its

statements were true.  Indeed, the Company shared the very metrics that supported the veracity of their statements, and there is not a single allegation suggesting either Individual Defendant did not believe their statements or withheld contradictory information.  As for the Defendants' stock sales, the most plausible explanation is that the Defendants sold stock when investors would have expected them to: during the Company's direct listing IPO.

### 3.    The Complaint Fails to Plead Loss Causation

To plead loss causation, Plaintiff "must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event."  *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209–10 (9th Cir. 2016).  To do so, the Complaint must plead particularized facts establishing that "(1) the truth became known, and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated."  *In re BofI*, 977 F.3d at 789.

There are no such allegations here.  The only new fact the market learned on February 16, 2022, was that Amplitude was growing at a slower rate than previously projected.  This risk was already known.  Amplitude had warned investors that the Company's "revenue growth rate may decline over time," and "revenue growth could slow . . . for a number of reasons."  Ex. 1 at 19; ¶¶ 57, 93; *see also* Ex. 6 at 13.  A known and disclosed risk that ultimately materializes cannot establish loss causation. *See Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568 at *10 (N.D. Cal June 19, 2020).  The Complaint also alleges as corrective disclosures the Company's statements on February 16 that "early expansion caused the second quarter results to be 'a stronger quarter than normal,'" ¶ 84, and that the "land and expand strategy was still years away from accelerating revenue growth."  ¶ 85.  But this information had already been disclosed (*see, e.g.*, Ex. 3 at 26, 30–31; Ex. 4 at 6; Ex. 10 at 3) and therefore did not "reveal new information to the market that ha[d] not yet been incorporated into the price."  *In re BofI*, 977 F.3d at 794; *see also* ¶ 36; Ex. 3 at 10–20, 30.[9]

### VI.    CONCLUSION

Defendants request that the Court dismiss the Complaint in its entirety and with prejudice.

---

[9] Plaintiff fails to allege a primary violation of Section 10(b) and Rule 10b-5, so the Section 20(a) claim necessarily fails.  *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014).

Gibson, Dunn & Crutcher LLP

15

DATED: July 12, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Jessica Valenzuela
Jessica Valenzuela

*Attorneys for Defendants Amplitude, Inc.,
Spenser Skates, and Hoang Vuong*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:24-CV-00898-VC