ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
AELISH M. BAIG (201279)
HADIYA K. DESHMUKH (328118)
SNEHEE KHANDESHI (342654)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
aelishb@rgrdlaw.com
hdeshmukh@rgrdlaw.com
skhandeshi@rgrdlaw.com
         – and –
DANIELLE S. MYERS (259916)
MICHAEL ALBERT (301120)
KENNETH P. DOLITSKY (345400)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
kdolitsky@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL FAGAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> AMPLITUDE, INC., et al., <br><br> Defendants. | Case No. 3:24-cv-00898-VC <br><br> <u>CLASS ACTION</u> <br><br> LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT |

4857-1983-3046.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND FACTUAL BACKGROUND......................................................1

II.   LEGAL STANDARD...........................................................................................................2

III.  ARGUMENT.........................................................................................................................3

     A.    The Complaint Sufficiently Pleads Falsity ...............................................................3

          1.    Defendants' September 2021 Statements that Growth Was
             Accelerating Were Materially False and Misleading..................................3

          2.    Defendants' November 2021 and December 2021 Statements
             Concerning Existing Demand and Growth Momentum Were
             Materially False and Misleading.................................................................5

          3.    Facts Reported by Former Employees Are Adequately Pleaded and
             Support Material Falsity .............................................................................7

          4.    The Market's Reaction to the February 16, 2022 Disclosures
             Supports Material Falsity............................................................................8

          5.    *Omnicare* Does Not Shield Defendants' Misrepresentations .....................9

     B.    The Complaint Sufficiently Pleads a Strong Inference of Scienter .......................10

          1.    Defendants Knew Their September 2021 Statements Were False
             and Misleading...........................................................................................10

          2.    Defendants Knew Their November 2021 and December 2021
             Statements Were False and Misleading .....................................................11

          3.    Defendants' Stock Sales During the Class Period Bolster a Strong
             Inference of Scienter .................................................................................12

     C.    Temporal Proximity Between the False Statements and Corrective
          Disclosures Bolsters Plaintiffs' Allegations of Falsity and Scienter ....................13

     D.    The Complaint Sufficiently Pleads Loss Causation...............................................14

IV.   CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Baron v. Hyrecar Inc.*,
    2022 WL 17413562 (C.D. Cal. Dec. 5, 2022) .................................................................12, 13

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d (9th Cir. 2008) ........................................................................................................13

*Brody v. Transitional Hosps. Corp.*,
    280 F.3d 997 (9th Cir. 2002) ...................................................................................................3

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*,
    2022 WL 4491093 (S.D. Cal. Sept. 27, 2022) .......................................................................12

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005).................................................................................................................14

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) ..................................................................................................14

*Felipe v. Playstudios Inc.*,
    2024 WL 1380802 (D. Nev. Mar. 31, 2024) .............................................................................8

*Foman v. Davis*,
    371 U.S. 178 (1962).................................................................................................................15

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
    63 F.4th 747 (9th Cir. 2023) ...........................................................................................3, 4, 7

*Hayden v. Portola Pharm., Inc.*,
    2021 WL 3506614 (N.D. Cal. Aug. 10, 2021) ........................................................................11

*In re Allied Nev. Gold Corp. Sec. Litig.*,
    743 F. App'x 887 (9th Cir. 2018) ...............................................................................................8

*In re Alphabet, Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021) ...................................................................................................2, 9

*In re Apple Inc. Sec. Litig.*,
    2020 WL 2857397 (N.D. Cal. June 2, 2020).........................................................................6, 9

*In re Apple Inc. Sec. Litig.*,
    2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) .......................................................5, 6, 7, 13

**Page**

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) ...............................................................................................11

*In re Finisar Corp. Sec.*,
    646 F. App'x 506 (9th Cir. 2016) .............................................................................................3

*In re Juno Therapeutics, Inc.*,
    2017 WL 2574009 (W.D. Wash. June 14, 2017)......................................................................9

*In re LendingClub Sec. Litig.*
    254 F. Supp. 3d 1107 (N.D. Cal. 2017) ....................................................................................4

*In re Shoretel Inc.*,
    2009 WL 24836 (N.D. Cal. Feb. 2, 2009) ...............................................................................4

*In re Stitch Fix, Inc. Sec. Litig.*,
    2020 WL 5847506 (N.D. Cal. Sept. 30, 2020) .....................................................................6, 7

*In re Vaxart, Inc. Sec. Litig.*,
    576 F. Supp. 3d 663 (N.D. Cal. 2021) ...............................................................................12, 14

*Johnson v. Costco Wholesale Corp.*,
    2019 WL 6327580 (W.D. Wash. Nov. 26, 2019)......................................................................4

*Junge v. Geron Corp.*,
    2021 WL 1375960 (N.D. Cal. Apr. 12, 2021) .......................................................................13

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ...............................................................................................2, 3

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016) ...............................................................................................14

*Mazzaferro v. Aruba Networks Inc.*,
    2014 WL 12680773 (N.D. Cal. Aug. 1, 2014) .........................................................................8

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ...................................................................................................8

*No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ...................................................................................................9

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
    380 F.3d 1226 (9th Cir. 2004) ...............................................................................................12

**Page**

*Omnicare, Inc. v. Laborers Dist. Council Const. Indust. Pension Fund*,
   575 U.S. 175 (2015).......................................................................................................................9

*Police & Fire Ret. Sys. of the City of Detroit v. Crane*,
   87 F. Supp. 3d 1075 (N.D. Cal. 2015) ...............................................................................11, 14

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ........................................................................................................8

*Reese v. Malone*,
   747 F.3d 557 (9th Cir. 2014) .......................................................................................................10, 13

*Ret. Tr. v. RH, Inc.*,
   302 F. Supp. 3d 1028 (N.D. Cal. 2018) ...................................................................................13

*Roberti v. OSI Sys., Inc.*,
   2015 WL 1985562, at *11 (C.D. Cal. Feb. 27, 2015)..............................................................13

*S. Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) .......................................................................................................11

*SEB Inv. Mgmt. AB v. Wells Fargo & Co.*,
   2024 WL 3579322 (N.D. Cal. July 29, 2024)......................................................................11, 12

*Shankar v. Zymergen Inc.*,
   2022 WL 17259057 (N.D. Cal. Nov. 29, 2022) .............................................................13, 14

*Shenwick v. Twitter, Inc.*,
   282 F. Supp. 3d 1115 (N.D. Cal. 2017) ........................................................................6, 8, 10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007)................................................................................................2, 10, 12

*Turocy v. El Pollo Loco Holdings, Inc.*,
   2017 WL 3328543 (C.D. Cal. Aug. 4, 2017).........................................................................13

*Weston v. DocuSign, Inc.*,
   669 F. Supp. 3d 849 (N.D. Cal. 2023) ............................................................................ *passim*

**Page**

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78j(b)...........................................................................................................................2
    §78u-4(b)(1)(B)..............................................................................................................3
    §78u-4(b)(2)(A) ...........................................................................................................10


Federal Rule of Civil Procedure
    Rule 10b-5................................................................................................................2, 14
    Rule 10b-5(a) .................................................................................................................2
    Rule 10b-5(c) .................................................................................................................2
    Rule 12(b)(6)..................................................................................................................2
    Rule 15.........................................................................................................................15

17 C.F.R.
    §240.10b-5 ....................................................................................................................2

**SECONDARY AUTHORITIES**

Taylor J. Wilson, *Risk and Reputation*,
    121 Mich. L. Rev. (2022)............................................................................................13

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Lead Plaintiff Chicago & Vicinity Laborers' District Council Pension Fund ("Plaintiff") hereby submits this Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint (ECF 56) ("Motion" or "MTD").[1]  This case arises out of a fraud perpetuated by a software-as-a-service company, Amplitude, that seized on its short-lived growth fueled by the COVID pandemic. Having purportedly experienced record-breaking growth during the pandemic as businesses needed to figure out quickly how to best engage users on their online platforms, Amplitude chose to quickly pursue a direct listing IPO thereafter.  Accordingly, Amplitude and its executives engaged in a scheme to quickly inflate Amplitude's reported revenue with substantial pull-ins and early customer renewals, the significance of which they concealed from investors in order to mask slowing growth in favor of the false appearance of accelerating growth.  The incentive?  Millions of dollars pocketed as Individual Defendants unloaded shares for sale to the public.

In the days leading into the IPO, Defendants promoted the Company's strong financial results from the first half of the year, highlighting record-breaking expansion in 2Q21.  They told investors this success was a result of the strong demand that was being accelerated by their vaunted "Land and Expand Strategy" ("Land & Expand").  Indeed, in the offering documents, Defendants touted Land & Expand as the Company's primary growth strategy.  Unbeknownst to investors, however, 2Q21 success was in fact the result of larger-than-normal contract renewals during the quarter, whereby Defendants pulled forward revenue that would have been realized in future quarters.  The results: A soaring stock price on the Company's public debut and a $5 billion valuation.  Not surprisingly, Individual Defendants cashed out over $40 million of their stock in the first 72 hours.

While Defendants continued to tell investors that Amplitude was experiencing strong growth and demand for their products was accelerating, internally, Amplitude was sounding the

---

[1]  "Defendants" are Amplitude, Inc. ("Amplitude" or the "Company") and "Individual Defendants" Spenser Skates ("Skates") and Hoang Vuong ("Vuong").  All "¶_" citations herein are to the Amended Complaint for Violation of the Federal Securities Laws (ECF 55) ("Complaint").  All terms not defined herein are defined in the Complaint.

alarm as customers were choosing to renew their contracts for fewer services and finding it difficult to get budget approval for Amplitude products altogether.  Despite that, as late as December 2021, Defendants assured investors that growth was continuing to accelerate, and while Land & Expand used to take many years, the pandemic accelerated plans to the course of months or weeks.

Investors were thus shocked when just ten weeks later – and just two quarters following the IPO – Defendants announced that Land & Expand in fact was not accelerating growth, and expansion could take years.  Amplitude stock price immediately plummeted by almost 60%.  Indeed, analysts found the reversal in news difficult to reconcile with Defendants' past statements about continuing growth.  To date, the stock price has not recovered.

These facts are largely undisputed.  The Motion instead seeks to inject extrinsic facts improperly raised at the pleading stage, makes baseless accusations that Plaintiff's allegations constitute insufficient puzzle pleading, and attempts to invoke misplaced legal defenses that have no bearing on the false statements of present fact alleged.  The Motion should be denied.

## II.    LEGAL STANDARD

To establish a claim of securities fraud under §10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, a plaintiff must allege: (i) a material misrepresentation or omission; (ii) made with scienter; (iii) in connection with the purchase or sale of a security; (iv) relied upon by plaintiff; (v) a loss causally connected to the alleged fraud; and (vi) economic loss or damages.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018).  In assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "consider the complaint in its entirety," "accept all factual allegations . . . as true," and construe those allegations in the light most favorable to the plaintiff.  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007).[2]

As Defendants have not targeted Plaintiff's Rule 10b-5(a) and (c) claims in their Motion, Plaintiff's scheme liability cannot be dismissed.  *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021).

---

[2]    All emphasis added and citations and footnotes omitted unless otherwise indicated.

## III.   ARGUMENT

### A.   The Complaint Sufficiently Pleads Falsity

To allege falsity, Plaintiff need only "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement [was] misleading." 15 U.S.C. §78u-4(b)(1)(B); *In re Finisar Corp. Sec.*, 646 F. App'x 506, 507 (9th Cir. 2016).  Even a literally true statement "may be misleading if it omits material information."  *Khoja*, 899 F.3d at 1008-09; *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (omission is actionably misleading when it "create[s] an impression of a state of affairs that differs in a material way from the one that actually exists").  As required by statute, the Complaint sets forth each false statement and the reason why it is misleading.  15 U.S.C. §78u 4(b)(1)(B); *see* ¶¶45, 67, 77.[3]

### 1.   Defendants' September 2021 Statements that Growth Was Accelerating Were Materially False and Misleading

Defendants were emphatic on September 14, 2021 (two weeks before the IPO), that Amplitude was seeing "accelerating growth in customer accounts along with accelerated growth in revenue"; "***we continue to see strong customer momentum***."  ¶37.  They added that Amplitude was "***seeing*** that growth drive from both new lands, new customers [and] by the acceleration of new customer paying customers."  ¶38.  They reiterated, "we're just ***seeing an uptake***.  We're ***seeing acceleration*** in the business ***and an uptake from customers***."  ¶39.  On September 21, 2021, when reporting Amplitude's 2Q21 financial results, Defendants told investors that customers "are just expanding."  ¶44.  All of these present-tense statements gave investors the false impression that Land & Expand was, when the statements were made, fueling growth.  ¶¶36, 42.  In fact, Plaintiff alleges growth was contracting.  While Vuong cited "strong customer upsells"[4]

---

[3]   Plaintiff made an inadvertent typographical error in citing ¶64 in ¶67 (*see* MTD at 6 n.2).  Rather, ¶63, which is a statement made by Vuong, should have been cited.  Plaintiff does not seek to attribute an analyst report's statement to Defendants.

[4]   Defendants' challenge to this and additional statements as puffery fails (MTD at 11), because they "'provided a concrete description of the past and present state of'" Amplitude's customer growth momentum and successful execution of Land & Expand.  *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 770 (9th Cir. 2023).  Also, "many of the challenged statements were made during earnings conference calls after [the Company] announced

(*i.e.*, expansion) and only "some early customer renewal" as drivers of 2Q21 growth, the statements were false and misleading because they concealed that positive 2Q21 results were substantially inflated by early customer renewals and Amplitude's push to complete deals before the IPO. ¶¶42, 68(a).[5] These statements made prior to the IPO, as *The Wall Street Journal* reported, sent the stock price "soar[ing] in [its] Wall Street debut." ¶48.

In early November 2021, after a disappointing third quarter, UBS wondered about the impact of early renewals in Amplitude's 2Q21. ¶64.[6] In February 2022, Vuong ultimately admitted it was actually early renewals that had caused 2Q21 results – results that were reported just one week before the IPO – to be "a stronger quarter than normal." ¶84. This information was material because investors had been led to believe 2Q21 results were due to sustainable organic growth, lending credibility to Defendants' false representations of accelerating demand. *See In re LendingClub Sec. Litig.* 254 F. Supp. 3d 1107, 1118 (N.D. Cal. 2017) ("investors would also have been interested to know that millions of dollars of loans were not the result of organic matches . . . but were inflated artificially through self-dealing disguised as real transactions"). *In re Shoretel Inc.*, 2009 WL 24836, at *3 (N.D. Cal. Feb. 2, 2009) (falsity pled where "there was not really a growth in 'demand' but instead a growth in the pushy, aggressive sales tactics").

In February 2022, Defendants also disclosed Land & Expand would take "years" as opposed to "weeks or months" to show growth and profitability. This news was in sharp contrast to the impressions left by the September false statements, and support an inference of falsity. *See Johnson v. Costco Wholesale Corp.*, 2019 WL 6327580, at *13 (W.D. Wash. Nov. 26, 2019) ("later public disclosures may indicate the falsity of earlier disclosures").

---

disappointing financial predictions or results" (¶¶57-60, 62-63), and many "were made in response to specific questions asked by financial analysts." ¶¶60, 62-63; *Glazer*, 63 F.4th at 770-71.

[5]    Though the Motion attempts to cast this statement as a disclosure of the truth (MTD at 10), "at best, it is a half-truth," and still false. *Glazer*, 63 F.4th at 780.

[6]    The Motion's attempt to utilize this January 27, 2022 analyst report as evidence that Defendants adequately disclosed the impact of the early renewals fails. MTD at 10. This report reveals what the analyst learned only through her own back channel checks with Amplitude customers, and not from what Defendants disclosed to the public.

**2.**     **Defendants' November 2021 and December 2021 Statements Concerning Existing Demand and Growth Momentum Were Materially False and Misleading**

With the September 2021 misrepresentations still in the market, in November 2021, Defendants continued to falsely represent that expansion was being "driven by strong demand for our products" (¶58), and "continuing . . . acceleration of customer growth." ¶59.  Vuong assured "we continue to see great momentum" in Amplitude's largest customers. ¶63.  As noted by analyst Williams Blair, Defendants conveyed "[g]rowth *is* accelerating."  ¶65.  Similarly, in December 2021, when asked about "the demand environment" and whether recent growth momentum was "durable," Skates continued to falsely maintain that growth momentum was accelerating.  ¶71.  *See Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 863-68 (N.D. Cal. 2023) (finding false statements about durability of customer demand).

These false statements caused Amplitude's stock price to trade as high as $83.28 on November 10, 2021.  ¶66.  Amplitude used those assurances and the continued concealment of the fact that growth was not accelerating, and that 2Q21 results were inflated by early renewals to reinforce that the "team continues to execute well on our land and expand strategy" and that performance was so strong, that Amplitude reaffirmed its guidance for FY22 (¶59).[7]  This stated confidence in Land & Expand's short-term results belies any notion that Defendants disclosed their strategy would take years to bear fruit.  MTD at 1, 8-9.[8]

---

[7]    Challenges to ¶¶40, 43, 59 as forward looking fail.  MTD at 10-11.  Though Plaintiffs do not allege the guidance is false, even a guidance statement can shed light on whether other statements are actionable.  *See, e.g.*, *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *1, *11-*12 & n.10 (N.D. Cal. Nov. 4, 2020) ("*Apple II*") (by issuing strong guidance, "defendants had an added duty to ensure that facts on the ground supported their extraordinary claims").

[8]    In any case, the purported disclosures (MTD at 3, 8, 10) never revealed customer growth momentum was actually contracting, or that early renewals had bolstered 2Q21 results at the expense of future quarters.  Also, Vuong's representation that "those tailwinds are going to stay" belies Defendants' assertion that the Company "made clear that COVID-associated tailwinds were limited to previous quarters."  ¶38; MTD at 10.  And where the purported disclosures of early renewals are the very statements alleged to have been false, plausible inferences must be drawn in Plaintiff's favor.  *Compare* Ex. 4 at 6, *with* ¶42; *compare* Ex. 9 at 3, *with* ¶72.

As late as December 7, 2021, Skates further reported expansion plans that "were supposed to take maybe years" were happening in "the course of months or weeks." ¶71.[9]  In truth, former Amplitude employees reported that by 4Q21, Amplitude was seeing its larger customers renew their contracts for fewer services at lower rates. ¶68(a)-(b).  That's not acceleration.  By November 2021, customers were actually less willing to expand their use of Amplitude products and were finding it more difficult to gain budget approval for expenditures on Amplitude.  ¶68(c).  In fact, Defendants concede: "Growth Was Slowing After [Amplitude] Went Public."  MTD at 4.

Just ten weeks later, on February 16, 2022, Defendants revealed the opposite: Expansion was not occurring in the course of months or weeks, instead, it could "take many years" ¶83.  The Complaint sufficiently pleads falsity of the customer-growth-momentum statements.  *See Weston*, 669 F. Supp. 3d at 867 (N.D. Cal. 2023) (company expressed confidence in demand when it saw warning signs of slowing demand); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1137, 1139 (N.D. Cal. 2017) (material omission where "disclosure of the fact that DAU was flat or declining during the [c]lass [p]eriod would have put investors on alert that MAU was not really accelerating").

The alleged misrepresentations were not, as Defendants contend, statements of historical fact but instead representations of how Amplitude was doing at the time the statement was made. MTD at 1, 7, 9.  The Motion attempts the very same argument as those made in *Apple II*, where the court found that even though the defendant's false statement that "'emerging markets that *we're seeing* pressure in' . . . referred to the previous quarter, he apparently did so to provide an illustration for his present-tense description." 2020 WL 6482014, at *5.  Similarly, Defendants here made statements of current business conditions.  *See, e.g.*, ¶37 ("We *continue to see*," and "*we're* excited *to see accelerating growth*."); ¶39 ("*we're seeing* acceleration"); ¶63 ("*we continue to see* great momentum").[10]  *See also In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at

---

[9]    The Motion's injecting external facts to cite examples about customer expansion fails.  MTD at 8-9 (citing Ex. 3 at 30-31, Ex. 6 at 5-6).  The alleged misrepresentations falsely assured investors that customer growth was accelerating at a faster pace than before the pandemic.  ¶71.

[10]    Unlike *In re Stitch Fix, Inc. Sec. Litig.*, 2020 WL 5847506, at *5 (N.D. Cal. Sept. 30, 2020) (MTD at 7), Plaintiff has "sufficiently allege[d] the 'state of affairs' as it 'actually exist[ed]' on

*16 (N.D. Cal. June 2, 2020) ("*Apple I*") (even if statements "concern[] 'last quarter,' the context clearly suggests that business there ***continues*** to be strong"). "At this stage in the proceedings, the [c]ourt must draw inferences in favor of plaintiff." *Apple II*, 2020 WL 6482014, at *6.

### 3. Facts Reported by Former Employees Are Adequately Pleaded and Support Material Falsity

The falsity of the November 2021 and December 2021 statements are further supported by allegations attributed to the accounts of two Amplitude former employees. "A complaint relying on confidential witness statements . . . must describe the confidential witness with 'sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.'" *Glazer*, 63 F.4th at 766-67. Courts consider: (i) "the level of detail provided by the confidential witnesses"; (ii) "the plausibility of the allegations"; (iii) "the number of sources"; (iv) "the reliability of the sources"; (v) "corroborating facts"; and (vi) "similar indicia of reliability." *Id.* at 767.

The Motion completely ignores that the Complaint sets forth the duration of each former employee's employment, their job titles, and job responsibilities in support of the reliability of the allegations attributed to them. *Glazer*, 63 F.4th at 771. ¶32(a)-(b); *see* MTD at 8 & n.3. For example, FE1 was a former Director on the Customer Success team, which was responsible for customer retention and renewals and identifying expansion opportunities within current accounts. ¶¶32(a), 68(a). FE2 was an Amplitude Client Account Executive for almost five years and was responsible for executing the very Land & Expand strategy at issue. ¶¶32(b), 68(c). The allegations detailing the bases of the former employees' knowledge is sufficient. *See Weston*, 669 F. Supp. 3d at 882 (witnesses adequately pled by "describing their roles . . . how long they were employed there, the nature of their responsibilities, and . . . their exact titles").

Here, the Complaint relies on FE1 to allege: (i) the Company made a strong push to complete deals prior to the IPO; (ii) by November 2021, Amplitude was experiencing significant

---

the issue of active [customer] growth" as of the time the statements were made. *Stitch Fix*, 2020 WL 5847506, at *5 (first alteration in original).

partial churn; (iii) the severity of this churn was being discussed at weekly at-risk meetings;[11] (iv) such risk was logged into the Company's *Clary* forecasting system; and (v) Skates regularly attended Customer Success team meetings with FE1.  ¶¶32(a), 68(a)-(b).  Likewise, as a Client Account Executive, because FE2's job responsibilities included making sales of Amplitude products, FE2 was in a position to know Amplitude's customers were finding it difficult to obtain approval for more spend on Amplitude.  ¶¶32(b), 68(c).  That FE1 and FE2 both reported customer contraction during 4Q21 are "corroborating allegations [that] also support their reliability."  *Weston*, 669 F. Supp. 3d at 882.

Defendants improperly inject an artificial requirement that the former employees must have directly interacted with Individual Defendants.  MTD at 12; *see Felipe v. Playstudios Inc.*, 2024 WL 1380802, at *17 (D. Nev. Mar. 31, 2024) (crediting CWs even where they "do[] not directly allege that [defendant] communicated with CW1 or CW2"); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1146 (N.D. Cal. 2017) ("Even if the CWs statements are unreliable as to the individual Defendants' state of mind, they reliably bolster the" inference of scienter.).[12]

### 4.     The Market's Reaction to the February 16, 2022 Disclosures Supports Material Falsity

The Motion wholly ignores the market's reaction to the February 16 disclosures that Land & Expand would take years to prove successful.  Analysts were floored by the incongruence between Defendants' prior statements and the announcements just a few months later.  *See* ¶¶86-89.  For example, Citigroup found that the disappointing news coming "***just two quarters***" after the direct listing was "***hard to reconcile***."  ¶86.  Citigroup further reported that "the ~60%

---

[11]  The severity of the problem distinguishes this case from *Mazzaferro v. Aruba Networks Inc.*, 2014 WL 12680773 (N.D. Cal. Aug. 1, 2014), where the court found confidential witnesses established the company at most "lost one significant client."  *Id.* at *1; MTD at 8.

[12]  Defendants' reliance on *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061-62 (9th Cir. 2014) (MTD at 12) and *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416 (9th Cir. 2020) (MTD at 8) is misplaced as Plaintiff does not allege that former employees knew Defendants' state of mind.  Anyway, FE1 did attend meetings concerning high-profile accounts with Skates.  ¶32(a); *see In re Allied Nev. Gold Corp. Sec. Litig.*, 743 F. App'x 887, 888 (9th Cir. 2018) ("at least one defendant was present at 'daily meetings' during which the nature and gravity of [adverse] issues were discussed").

trouncing to the stock . . . will not be forgotten," and that the poor performance was due to the 2Q21 "pull forward and severe growing pains." ¶89. BofA questioned practically all of Defendants' previously disclosed business metrics, including the impact of pull-forwards, demand trends, and execution risks. ¶88. These reactions, in addition to the stock price plummeting almost 60%, support the material falsity of Defendants' prior statements. ¶¶85, 89; *See Alphabet*, 1 F.4th at 703 ("[M]arket reaction, increased regulatory and governmental scrutiny, both in the United States and abroad, and media coverage alleged by the complaint to have occurred after disclosure all support the materiality of the misleading omission."); *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 935 (9th Cir. 2003).

### 5. *Omnicare* Does Not Shield Defendants' Misrepresentations

The Motion has contrived certain alleged misrepresentations into purported opinions to force them into the heightened pleading standards under *Omnicare, Inc. v. Laborers Dist. Council Const. Indust. Pension Fund*, 575 U.S. 175 (2015). MTD at 11. But, "[p]urported statements of 'opinion' that contain untrue 'embedded facts' are not 'opinions' shielded from liability under the securities laws." *In re Juno Therapeutics, Inc.*, 2017 WL 2574009, at *5 (W.D. Wash. June 14, 2017). For example, the challenged statements included statements such as "[t]hey're growing fast" (¶38), "we also saw other customers really adding and expanding" (¶44), "the success that we're actually having" (¶60), "we continue to see great momentum" (¶63), "the pandemic has really accelerated plans" (¶71), and "we're adding more customer[s]" (¶72). These statements "contain[] representations of fact." *Apple I*, 2020 WL 2857397, at *16.

In any case, "[e]ven when framed as an opinion, a reasonable investor 'expects not just that the issuer believes the opinion (however irrational), but that it fairly aligns with the information in the issuer's possession at the time.'" *Id.* Plaintiff has adequately alleged that Defendants' statements did not align with the information they possessed at the time, therefore they were misleading. The Complaint details that Defendants possessed information but failed to disclose that 2Q21 results were substantially impacted by early renewals, rendering statements addressing 2Q21 results actionable. ¶¶38, 44, 71-72. So are the challenged statements made in November or

December 2021 as they too did not align with the information available regarding significant churn and slowing customer spend. ¶¶60, 62-63, 71-72. The statements are actionable.

### B.     The Complaint Sufficiently Pleads a Strong Inference of Scienter

A complaint sufficiently pleads scienter if it "state[s] with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind." 15 U.S.C. §78u-4(b)(2)(A). A "'strong inference'" of scienter is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. The inference "need not be irrefutable, *i.e.*, of the 'smoking gun' genre, or even the 'most plausible of competing inferences'"; and allegations of motive are not required. *Id*. at 324-35. The Complaint pleads Defendants knew or recklessly disregarded Land & Expand was not driving strong growth at Amplitude and customer growth momentum was not accelerating during the Class Period.

### 1.     Defendants Knew Their September 2021 Statements Were False and Misleading

The Complaint adequately alleges that Defendants knew or deliberately disregarded their September 2021 statements were false and misleading when made because Defendants knew that 2Q21 results were substantially impacted by early renewal activity. Courts presume that an executive speaking to investors on a matter of importance does so with knowledge of the truth, or is deliberately reckless in not knowing the truth. *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014) (defendant "'bridged the [scienter] gap' herself by referencing the data directly").

Here, Defendants actually knew that the amount, size, and impact of early renewals on Amplitude's 2Q21 financial results was a "key concern." ¶79. Vuong admitted as much. ¶84. Defendants were also motivated to inflate 2Q21 revenue and financial metrics because its IPO was just one week after the report. Thus, when Defendants reported 2Q21 results were "driven in part by . . . some early customer renewal that took place in the quarter" (¶42), the strongest inference is that they knew the impact the renewals had on 2Q21. *See Shenwick*, 282 F. Supp. 3d at 1147 ("How could [defendant] have known that DAU was 'dependent by market' or claim that it could be 'misleading' without knowledge of the DAU numbers?").

Instead of disclosing this substantial impact, Defendants falsely assured growth was ***accelerating***, *i.e.*, continuing at an increasingly fast pace. *See, e.g.*, ¶37. These facts, considered holistically, raise a strong inference of scienter. *See Police & Fire Ret. Sys. of the City of Detroit v. Crane*, 87 F. Supp. 3d 1075, 1085 (N.D. Cal. 2015) ("intended to mislead the public when they reported revenue growth and touted the strength of the DocAlert business without disclosing that they had systematically canceled contracts for the purpose of accelerating revenue recognition").

**2.     Defendants Knew Their November 2021 and December 2021 Statements Were False and Misleading**

In addition to actual knowledge of the pull-in and early renewals that inflated 2Q21 results, the Complaint adequately alleges that Defendants knew their November 2021 and December 2021 statements were false and misleading. "[S]pecific allegations about management's exposure to factual information within the company" support a strong inference of scienter. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008); *see In re Daou Sys., Inc.*, 411 F.3d 1006, 1022-23 (9th Cir. 2005) (same). Plaintiff alleges Defendants actively monitored expansion rates and knew or deliberately disregarded that those rates were contracting. *See, e.g.*, ¶¶73, 77(b). Skates admitted, "we track the amount of usage that our end customers do predominantly on a weekly basis"; thus, he was well informed of customers' "willingness to buy" Amplitude products. ¶73. As Defendants have "highlighted the fact that the [C]ompany kept close track of data . . . including having 'visibility'" into the impact that data has on growth rates, "any suggestion that the [C]ompany's officers and directors were not aware of such basic information . . . would be absurd." *Hayden v. Portola Pharm., Inc.*, 2021 WL 3506614, at *5 (N.D. Cal. Aug. 10, 2021).

These facts are corroborated by former employee witnesses, who reported that Skates was involved with almost any large account that was experiencing significant churn. ¶¶32(a), 68(a). Such risk was entered into Amplitude's forecasting system and specifically used to anticipate customer retention and expansion. ¶68(b). Similar facts were sufficient for the court in *Weston v. DocuSign* to find scienter pleaded. *Weston*, 669 F. Supp. 3d at 880; *SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, 2024 WL 3579322, at *12-*13 (N.D. Cal. July 29, 2024) ("Statements from the

executives, themselves, about using and having access to" data and "[d]efendants' demonstrated focus on diversity issues supports a strong inference of scienter.").

Lastly, the radically different position Skates took concerning Land & Expand on February 16, 2022, now conveying that expansion plans were "a many-year thing away" (¶83), further supports an inference of scienter with respect to his December statements that expansion timelines had been accelerated to the course of "months or weeks."  ¶¶71, 83; *see In re Vaxart, Inc. Sec. Litig.*, 576 F. Supp. 3d 663, 673 (N.D. Cal. 2021) (that company later "toned down the language to more accurately reflect" true state of affairs supported scienter).

### 3. Defendants' Stock Sales During the Class Period Bolster a Strong Inference of Scienter

Individual Defendants and other corporate insiders unloaded over $158 million in stock during the five-month Class Period, demonstrating Defendants' astronomical incentive to commit fraud.  ¶78.  Skates and Vuong themselves pocketed $30 million and $17.5 million, respectively. ¶78; *see Tellabs*, 551 U.S. at 325 ("[P]ersonal financial gain may weigh ***heavily*** in favor of a scienter inference.").  Even if not sufficient on its own, in a holistic review, Defendants' and other insider stock sales bolster a strong inference of scienter.  *SEB*, 2024 WL 3579322, at *11.

The Motion ignores the sheer volume of sales.[13]  *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004) (courts should give "less weight" to the fact sales "may represent a small portion of the defendant's holdings" if the amount of money made from the sale is sufficiently high in magnitude); *see also Baron v. Hyrecar Inc.*, 2022 WL 17413562 (C.D. Cal. Dec. 5, 2022) (sales as low as 17% suspicious); *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 2022 WL 4491093 (S.D. Cal. Sept. 27, 2022) (sales suspicious where percent not alleged).  Defendants achieved their windfall by timing their sales to coincide with high share prices that were worth a mere fraction by the end of the Class Period.  Plaintiff does not need to show prior stock sales after an IPO to show that the timing was suspicious.  *See*

---

[13]  Plaintiff properly calculated stock sales as a percentage of Class A holdings for the reasons explained in the Complaint. ¶78 n.9.  Plaintiff only represents Class A shareholders, and Class A shares were the only ones registered in the IPO. *Id.*  Individual Defendants had a strong incentive to hold Class B shares (worth five times the voting power) to maintain control at the company. *Id.*

*Turocy v. El Pollo Loco Holdings, Inc.*, 2017 WL 3328543, at *18 (C.D. Cal. Aug. 4, 2017) ("the fact that Defendants sold large amount of stock at the first available opportunity . . . is notable").

In fact, Defendants' unusual choice to pursue an IPO via a direct listing was itself suspicious. It allowed Defendants to immediately take advantage of the temporary momentum driving Amplitude's growth by skipping a lengthy due-diligence process and avoiding a customary six-month lock-up period associated with traditional IPOs. ¶31; *see* Taylor J. Wilson, *Risk and Reputation*, 121 Mich. L. Rev. 461, 470, 487 (2022). Defendants' cited authorities are inapposite because they involve traditional IPOs, where executives typically seek to grow investment in the company, whereas in a direct listing, the company's coffers receive nothing. ¶31. Finally, even "non-defendant executives' sales support an inference of scienter," *Junge v. Geron Corp.*, 2021 WL 1375960 (N.D. Cal. Apr. 12, 2021), and can actually bolster an inference of scienter, *Baron*, 2022 WL 17413562, at *15. Here, the alleged stock sales were all by executives or directors, meaning they had insider knowledge and the same incentive to sell as Defendants. ¶78.

### C.    Temporal Proximity Between the False Statements and Corrective Disclosures Bolsters Plaintiffs' Allegations of Falsity and Scienter

Events occurring just months after the false statements can suggest that adverse "facts were knowable at the time the [false statements were] issued." *Shankar v. Zymergen Inc.*, 2022 WL 17259057, at *2 (N.D. Cal. Nov. 29, 2022). Indeed, this Court found a gap of over three months sufficient to support falsity. *See id.* Other courts in this Circuit have found a temporal gap of eight weeks, and even longer, sufficient. *See City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 302 F. Supp. 3d 1028, 1042 (N.D. Cal. 2018); *see also Reese v. Malone*, 747 F.3d 557, 574-75 (9th Cir. 2014) (three to six months); *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *11 (C.D. Cal. Feb. 27, 2015) (six months); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d at 982 at 988 n.5 (9th Cir. 2008) (two weeks).

Here, the entire Class Period spans just less than five months. ¶2. Skates' December statement that "the pandemic has really accelerated plans that were supposed to take maybe years into the course of months or weeks" (¶71), occurred just ten weeks before the truth was disclosed. ¶¶82-83. *Apple II*, 2020 WL 6482014, at *10-*12 (two month gap). Indeed, one analyst found

that Defendants' disappointing outlook "***just two quarters***" after the direct listing was "hard to reconcile." ¶86. This "very short time period between the [false] statement and the adverse disclosures, suggest[s] that these facts were knowable at the time the [false] statement was issued." *Shankar*, 2022 WL 17259057, at *2. Where, like here, Defendants have not identified any intervening events that occurred between the misrepresentations and disclosure, courts place even "more weight" on temporal proximity. *Fecht v. Price Co.*, 70 F.3d 1078, 1083-84 (9th Cir. 1995) (more than two months gap).

### D.  The Complaint Sufficiently Pleads Loss Causation

To plead loss causation, the Complaint must provide Defendants notice of what "the causal connection might be between [plaintiff's] loss and the misrepresentation." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). "The burden of pleading loss causation is typically satisfied by allegations that the defendant revealed the truth through 'corrective disclosures' which 'caused the company's stock price to drop and investors to lose money.'" *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016). Pleading loss causation is "not meant to impose a great burden upon a plaintiff" but to "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharm.*, 544 U.S. at 347. Here, the Complaint alleges a series of partial disclosures on November 9, 2021 and December 7, 2021, ultimately ending with the February 16, 2022 earnings announcements. On February 16, 2022, Amplitude revised its 2022 revenue guidance downward citing slowing customer growth momentum and longer expansion timelines. ¶¶81-82. The Motion in fact concedes: "Investors reacted to the slowing growth." MTD at 4. Plaintiff's "loss was therefore directly related to the facts the [D]efendants omitted the prior quarter. This is sufficient []." *Crane*, 87 F. Supp. 3d at 1086.[14]

---

[14]  Because the Complaint adequately alleges that Skates and Vuong directly or indirectly controlled Amplitude's decision making (¶¶33-35), "including the content and dissemination of the various statements" giving rise to a claim under Rule 10b-5, the §20(a) claims should also be upheld. *Vaxart*, 576 F. Supp. 3d at 675.

## IV.     CONCLUSION

For the foregoing reasons, the Motion should be denied.  In the event the Court finds the alleged facts insufficient, Plaintiff respectfully requests leave to amend to address any deficiencies the Court might identify.  Fed. R. Civ. P. 15; *Foman v. Davis*, 371 U.S. 178, 182 (1962).

DATED:  August 9, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
AELISH M. BAIG
HADIYA K. DESHMUKH
SNEHEE KHANDESHI


                                    s/ Shawn A. Williams
                               SHAWN A. WILLIAMS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
aelishb@rgrdlaw.com
hdeshmukh@rgrdlaw.com
skhandeshi@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
KENNETH P. DOLITSKY
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
kdolitsky@rgrdlaw.com

Lead Counsel for Lead Plaintiff