GIBSON, DUNN & CRUTCHER LLP
JESSICA VALENZUELA, SBN 220934
    jvalenzuela@gibsondunn.com
JEFF LOMBARD, SBN 285371
    jlombard@gibsondunn.com
310 University Avenue
Palo Alto, California  94301-1744
Telephone:     650.849.5300
Facsimile:     650.849.5333

BRIAN M. LUTZ, SBN 255976
    blutz@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, California  94111-3715
Telephone:     415.393.8200
Facsimile:     415.393.8306

*Attorneys for Defendants*
*Amplitude, Inc., Spenser Skates,*
*and Hoang Vuong*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AMPLITUDE, INC., SPENSER SKATES, and HOANG VUONG,<br><br>Defendants. | CASE NO. 3:24-cv-00898-VC<br><br><u>CLASS ACTION</u><br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br><u>HEARING</u><br>Date:        September 19, 2024<br>Time:        10:00 a.m.<br>Location:   Courtroom 04<br><br>Date Action Filed: February 14, 2024 |

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 2

    A. Plaintiff Fails to Plead Falsity ............................................................................ 2

        1. Defendants' September 2021 statements were not false or misleading. ........... 2

        2. Defendants' November and December 2021 statements were not false or misleading. ............................................................................................... 4

        3. The challenged statements are not actionable for other reasons. ...................... 6

    B. Plaintiff Fails to Plead Scienter ......................................................................... 7

        1. Plaintiff does not plead particularized facts showing that Defendants knew their statements were false when made. .................................................. 7

        2. The stock sale allegations do not establish a strong inference of scienter. ............................................................................................................ 9

    C. Plaintiff Fails to Plead Loss Causation ............................................................ 10

III. CONCLUSION ............................................................................................................ 10

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*In re Apple Inc. Sec. Litig.*,
2020 WL 6482014 (N.D. Cal. Nov. 4, 2020)................................................................4, 6

*Azar v. Yelp, Inc.*,
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018)..................................................................10

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
2019 WL 6877195 (N.D. Cal. Dec. 17, 2019).................................................................3, 6

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005)..........................................................................................8

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) .......................................................................................4, 6–7

*Jaszczyszyn v. SunPower Corp.*,
2024 WL 3463348 (N.D. Cal. July 17, 2024)...................................................................2

*Johnson v. Costco Wholesale Corp.*,
2019 WL 6327580 (W.D. Wash. Nov. 26, 2019) ..............................................................4

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014)..........................................................................................10

*Lorenzo v. SEC*,
587 U.S. 71 (2019).........................................................................................................7

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004).........................................................................................9

*Police & Fire Ret. Sys. of the City of Detroit v. Crane*,
87 F. Supp. 3d 1075 (N.D. Cal. 2015) .............................................................................8

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014)..........................................................................................8

*Reckstin Fam. Tr. v. C3.ai, Inc.*,
2024 WL 734497 (N.D. Cal. Feb. 22, 2024) ...................................................................10

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014)...........................................................................................7

*In re Robinhood Ord. Flow Litig.*,
2022 WL 9765563 (N.D. Cal. Oct. 13, 2022)...................................................................7

*SEB Inv. Mgmt. AB v. Wells Fargo & Co.*,
2024 WL 3579322 (N.D. Cal. July 29, 2024)...................................................................8

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:24-CV-00898-VC

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Shankar v. Zymergen Inc.*,
   2022 WL 17259057 (N.D. Cal. Nov. 29, 2022).....................................................................................8

*Shenwick v. Twitter, Inc.*,
   282 F. Supp. 3d 1115 (N.D. Cal. 2017) ...........................................................................................7

*In re SolarCity Corp. Sec. Litig.*,
   274 F. Supp. 3d 972 (N.D. Cal. 2017) ...........................................................................................10

*Tellabs, Inc. v. Makor Issues & Rts, LTD*,
   551 U.S. 308 (2007) .......................................................................................................................2

*In re Vaxart, Inc. Sec. Litig.*,
   576 F. Supp. 3d 663 (N.D. Cal. 2021) .............................................................................................8

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022) ...........................................................................................................4

*Weston v. DocuSign, Inc.*,
   669 F. Supp. 3d 849 (N.D. Cal. 2023) ........................................................................................5, 8

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A).........................................................................................................1–2

**Other Authorities**

Exchange Act Release No. 34-90768 (Dec. 22, 2020) ........................................................................10

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:24-CV-00898-VC

## I.    INTRODUCTION

Plaintiff's Opposition ("Opp.," ECF No. 58) confirms this case is based on classic "fraud by hindsight."[1]  Plaintiff's theory rests almost entirely on the baseless claim that Defendants' statements in February 2022 were an "admission" that prior statements in September, November, and December 2021 regarding customer demand and growth were false and misleading.  That is illogical.  The challenged statements and alleged corrective disclosures address different events and time periods.  The challenged statements in September, November, and December 2021 related to the Company's *historical performance* in Q2 and Q3 of 2021.  In contrast, the February 2022 statements related to something entirely different—Amplitude's prediction for *future performance* in FY 2022 and the basis for its prediction.  Thus, Defendants' statements in February 2022 could not—and did not—contradict what the Company said earlier.  Nor were the September, November, and December 2021 statements misleading by omission:  Defendants disclosed the very facts Plaintiff claims were concealed.  Specifically, the Company explained in September 2021 that its Q2 results were "driven in part by strong customer upsells and some early customer renewals," ¶ 42, and cautioned that the Company's land and expand strategy, which seeks to land new customers with an initial use case and then expand the relationship over time, could take years to bear fruit.  This information was well known to the market during the Class Period and cannot form the basis of an omissions-based claim.

As to the element of scienter, the Opposition fails to identify any specific facts suggesting that Defendants made the statements in September, November and December 2021 with knowledge they were false or with reckless disregard for the truth.  Plaintiff concedes that the two former Amplitude employees referenced in the Complaint provide nothing about the Individual Defendants' state of mind and are, thus, irrelevant to pleading scienter.  *See* Opp. at 8 n.12.  Plaintiff also concedes that the alleged stock sales—which are neither unusual nor suspicious—are "not sufficient on [their] own."  Opp. at 12.  As a result, Plaintiff cannot satisfy the PSLRA's heightened pleading standard, which requires particularized factual allegations suggesting "a strong inference that the defendant acted with the

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in Defendants' Motion ("Mot.," ECF No. 56).  Unless stated otherwise, all emphasis is added and all internal citations and quotations are omitted.

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:24-CV-00898-VC

required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). The lack of scienter is fatal to Plaintiff's claim.

As set forth more fully below and in Defendants' Motion, the Complaint should be dismissed in its entirety because Plaintiff fails to adequately plead falsity, scienter, and loss causation.

## II.    ARGUMENT

### A.    Plaintiff Fails to Plead Falsity

As explained in Defendants' Motion, Plaintiff's Section 10(b) claim fails because it has not alleged particularized facts establishing that Defendants' challenged statements were false when made or contained any material omission. *See* Mot. at 5–10. Moreover, many of the challenged statements are forward-looking statements, opinions, and puffery that are insulated from liability under federal securities laws. *See id.* at 10–12. The Opposition does not meaningfully address these defects.

### 1.    Defendants' September 2021 statements were not false or misleading.

Plaintiff argues that Defendants' statements in September 2021 that the Company saw "strong customer momentum" and "accelerated" growth in Q2 2021 gave the false impression that Amplitude's land and expand sales strategy was fueling growth. Opp. at 3. Specifically, Plaintiff contends these statements misled investors to believe that the Company's positive results for Q2 2021 were due to "sustainable organic growth," when, in fact, they were "substantially inflated by early customer renewals" and "growth was contracting." *Id.* at 3–4. This argument is not supported by any fact alleged in the Complaint, and Plaintiff fails to identify anything false or misleading about the September 2021 statements.[2]

*First*, Plaintiff cannot allege the September 2021 statements were false or misleading because

---

[2] Plaintiff concedes the exhibits submitted in support of Defendants' Motion are properly incorporated by reference (except for Exhibit 2, the Company's Form S-1/A). *See* ECF No. 58-1 at 3–7. However, Plaintiff argues "Defendants improperly ask the Court to accept each document incorporated by reference as true" to dispute supposedly well-pled facts in the Complaint. *Id.* at 1. Not so. Aside from Exhibit 2, all documents were submitted to provide context for the alleged misstatements and to show what the market knew at the time the statements were made. *See Jaszczyszyn v. SunPower Corp.*, 2024 WL 3463348, at *3 (N.D. Cal. July 17, 2024) (request for judicial notice and incorporation by reference proper to show what was disclosed to the market and to assess alleged misstatements in context). The Court "must" consider these documents under *Tellabs, Inc. v. Makor Issues & Rts, LTD*, which directs courts deciding motions to dismiss governed by the PSLRA to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." 551 U.S. 308, 322 (2007). Exhibit 2 is discussed in Section II.B.2.

Gibson, Dunn & Crutcher LLP

2

the statements were true.  The Company did, in fact, see "strong customer momentum" and "acceleration in the business and an uptake from customers" in Q2 2021, which continued into Q3.  *See* Ex. 3 at 25 (paying customers grew 51% year-over-year; customers representing $100,000 and $1 million in annual recurring revenue grew 40% and 69% year-over-year), Ex. 6 at 6 (paying customers grew 54% year-over-year).  Plaintiff does not dispute this (nor could it).

*Second*, the Opposition identifies no particularized facts that existed in September 2021 to support Plaintiff's assertion that Amplitude's Q2 2021 results were "substantially inflated" and "growth was contracting."  Opp. at 3–4.  Plaintiff attempts to manufacture such support by citing to former employee ("FE") allegations in the Complaint and relying on Defendants' later statements in February 2022.  *See* Opp. at 4 (citing ¶ 68(a)).  But the FEs make only limited alleged observations about November 2021, which say nothing about the state of the Company's business in September 2021 when the statements were made.  *See* ¶¶ 13, 68(a), 68(c).

Nor do Defendants' February 2022 statements contradict what they said *five months earlier* in September 2021.  Plaintiff argues that Defendants "admitted" in February 2022 that (1) early customer renewals caused strong Q2 2021 results, and (2) the Company's expansion efforts could "take 'years' as opposed to 'weeks or months' to show growth and profitability."  Opp. at 4.  But this is exactly what Defendants told investors in September 2021.  Vuong, the Company's CFO at the time, told investors in September 2021 that Q2 results were "driven in part by strong customer upsells and some early customer renewals."  *Compare* ¶ 42, *with* ¶ 84.  Plaintiff claims that Vuong's September 2021 statement was, "at best . . . a half-truth" because Defendants did not specifically state that early renewals "substantially inflated" Q2 results.  *See* Opp. at 4 n.5.  But, again, Plaintiff fails to identify any fact alleged in the Complaint that supports its claim that early renewals "substantially inflated" Q2 2021 results.  *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *15–16 (N.D. Cal. Dec. 17, 2019) (court did not accept plaintiff's characterization of allegedly wrongful sales practices as "material" to Oracle's cloud revenue because complaint lacked factual allegations to support that assertion).  Nor did Defendants omit material information about the timing of the land and expand strategy.  Defendants clearly warned investors in September 2021 that Amplitude's land and expand sales strategy might take years to bear fruit.  *See* ¶ 36 (stating that for one client, the land and

expand strategy took six years); Ex. 3 at 10–20 (describing varying timelines for customer expansion, including one that took five years); *id.* at 30–31 (cautioning that the Company did not "know exactly" when or if the land and expand strategy would bear fruit from any customer).

Plaintiff relies on *Johnson v. Costco Wholesale Corp.*, 2019 WL 6327580 (W.D. Wash. Nov. 26, 2019), to argue Defendants' September 2021 statements were misleading. But *Johnson* was about a later disclosure that directly contradicted earlier statements: The court held that defendants' admission that their "disclosure controls and procedures were *not effective*" established that a prior statement saying exactly the opposite—"disclosure controls and procedures *are effective*"—was false. 2019 WL 6327580, at *14. *Johnson* is also distinguishable from this case because plaintiff alleged with particularity "contemporaneous statements or conditions" that supported the inference that defendants' internal controls were, in fact, deficient when the earlier statement was made. *Id.*; *see also In re Apple Inc. Sec. Litig.* ("*Apple II*"), 2020 WL 6482014, at *5–6 (N.D. Cal. Nov. 4, 2020). Here, nothing about Defendants' February 2022 statements contradicts what they said in September 2021.

### 2. Defendants' November and December 2021 statements were not false or misleading.

Plaintiff's challenge to Defendants' November and December 2021 statements is similarly deficient. Plaintiff claims that Defendants "continued to falsely represent" that Amplitude was seeing accelerated customer growth in November and December 2021 when "growth was not accelerating" and that it continued to conceal that Q2 results "were inflated by early renewals." *See* Opp. at 5. But again, the Opposition identifies no facts showing that Defendants made a false or misleading statement in November or December 2021.[3]

*First*, Plaintiff does not actually plead particularized facts to support that growth was "not accelerating" as of November and December 2021. Plaintiff attempts to do so by pointing to FE1's unsubstantiated statement that, by November 2021, Amplitude experienced "significant partial churn"

___

[3] Plaintiff argues that "temporal proximity" between Skates' December 2021 statement that "the pandemic has really accelerated plans that were supposed to take maybe years into the course of months or weeks" and Defendants' "revelation" in February 2022 that the Company's "expansion could take years" supports the falsity of Defendants' earlier statements. Opp. at 2, 13–14. Not so. *See Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 622 (9th Cir. 2022) ("[W]ithout more, temporal proximity alone does not satisfy the particularity requirements of Rule 9(b)."); *see also Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.,* 63 F.4th 747, 777 (9th Cir. 2023) (same).

Gibson, Dunn &
Crutcher LLP

for some regions. ¶ 68(a). But FE1's observations—even if given credit—say nothing about whether growth was accelerating, or not. According to FE1, "partial churn" refers to customers that renewed contracts for fewer services than originally contracted. *Id*. FE1 provides no detail on how many customers experienced "partial churn," or the amount of revenue impacted, if any, so this vague observation says nothing about Amplitude's growth. Plaintiff also points to FE2's vague assertion that selling "Amplitude's complementary products . . . was much more difficult than selling the Analytics product" and that, by November 2021, "it became harder for Amplitude's clients to get budgets approved for incremental expenditure for Amplitude's products." ¶ 68(c). FE2 does not actually claim that any specific customer could not get approval for Amplitude's products or that any specific sale fell through as a result. Nor do the amorphous terms "more difficult" and "harder" provide the necessary detail to show Amplitude's growth was not accelerating—much less undercut the strong financial performance the Company reported—as of November 2021. The vague FE allegations here stand in sharp contrast to the well-pled "warning signs" in *Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 867–68 (N.D. Cal. 2023), cited by Plaintiff. There, plaintiff alleged that DocuSign lied to investors when it said that it would maintain its pandemic-driven growth after the pandemic subsided because the company's own data at the time the statements were made showed that pandemic customers used and retained products at lower rates and churned at higher rates, and usage levels had dropped by 30% during the class period. *Id.* Plaintiff here pleads no similar particularized facts.

*Second*, Plaintiff argues that the November and December 2021 statements about historical performance were misleading because the Company concealed that "early renewals had bolstered 2Q21 results at the expense of future quarters." Opp. at 5 n.8. But, as set forth above, Amplitude disclosed this to investors on numerous occasions. In September, November, and December 2021, the Company told investors that Q2 results were "driven in part by strong customer upsells and some early customer renewals," Ex. 4 at 6; it had "some large expansion in Q2 2021," Ex. 6 at 6; and "really large" expansions by a few customers in Q2, which were "unscheduled," boosted the Company's Q3 revenue and made "Q4 revenue and sequentially quarter-over-quarter a tougher comparison," Ex. 9 at 3, 9.[4]

---

[4] Plaintiff misleadingly argues that the November and December 2021 statements were representations

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:24-CV-00898-VC

Gibson, Dunn &
Crutcher LLP

### 3. The challenged statements are not actionable for other reasons.

***Forward-Looking Statements***.   The Company's projections about its future performance (¶¶ 40, 43, 59) fall squarely within the PSLRA's safe harbor.  *See* Mot. at 10–11.  Plaintiff concedes that it does "not allege the guidance" statements are "false."  Opp. at 5 n.7.

***Opinions***.  Plaintiff argues Defendants' statements of opinion contain representations of fact, but there is no support for this argument.  Opp. at 9–10.  Plaintiff does not identify a single verifiable "fact" embedded in any challenged opinion statement.[5]  And while Plaintiff argues that the Complaint "adequately alleged that Defendants' statements did not align with the information they possessed at the time," Plaintiff does not identify what information Defendants' "possessed at the time," much less information that "did not align" with the challenged statements.  Opp. at 9; *see supra* at 3–5.

***Puffery***.   Defendants' statements that the Company has "great momentum" and that it "continues to execute well" on its growth strategy, among similar others,[6] *see* Mot. at 11–12, are precisely the types of corporate puffery that are inactionable as a matter of law.  *See Oracle Corp.*, 2019 WL 6877195, at *9 (defendants' statements such as "we continue to see tremendous growth across our cloud business" and that their cloud transition was "going well" were subjective, unverifiable puffery and thus not actionable).  Plaintiff's reliance on *Glazer* is misplaced.  Opp. at 3 n.4.  There, the court rejected defendants' argument that phrases such as "tracking very well" or "very large pipeline" were puffery because the statements were made in response to analyst questions about the company's pipeline and plaintiffs pled facts indicating that defendants had information showing

about Amplitude's business at the time the statements were made (*i.e.,* in Q4 2021).  *See* Opp. at 6–7.  But a review of the statements in context makes clear that Defendants' November and December 2021 statements were addressing Amplitude's earlier performance in Q2 and Q3 2021.  For example, Plaintiff argues that Skates made a false statement on December 7, 2021 when he said that "expansion plans that 'were supposed to take maybe years' were happening in the 'course of months or weeks[,]'" because, "[b]y November 2021, customers were actually less willing to expand their use of Amplitude products and were finding it more difficult to gain budget approval for expenditures on Amplitude."  Opp. at 6.  But Skates' statement was not about Amplitude's Q4 performance; he was responding to an analyst's question about the catalysts for the robust growth *experienced in the previous two quarters*.  Ex. 9 at 1–2.  This distinction renders Plaintiff's discussion of *Apple II* irrelevant.  *See* 2020 WL 6482014, at *5–6 (N.D. Cal. Nov. 4, 2020) (rejecting defendants' argument that the challenged statements referred to the previous quarter given the context in which the statement was made).

[5] App'x Statements Nos. 4, 5, 8, 11, and 13–15 are statements of opinion.

[6] App'x Statements Nos. 3, 7–9, 11, and 13–19 are statements of corporate optimism or puffery.

Gibson, Dunn & Crutcher LLP

6

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:24-CV-00898-VC

the company's pipeline was filled with illusory deals. 63. F.4th at 770–71. "Given this context," *Glazer* held that "the statements cannot be discounted as mere 'puffery'." *Id.* at 771. No similar contextual facts are present here, so *Glazer* is inapposite.[7]

## B.    Plaintiff Fails to Plead Scienter

Plaintiff's Opposition demonstrates it has failed to plead a strong inference of scienter. Conspicuously absent from the Complaint is any allegation regarding Defendants' state of mind. Mot. at 12–13. Indeed, Plaintiff concedes there are no such allegations, Opp. at 8 n.12, and asks the Court to *infer* Defendants' intent to defraud based on conclusory allegations about Defendants' knowledge and stock sales during the Company's direct listing IPO that were neither unusual nor suspicious. Such allegations are insufficient to plead scienter.

### 1.    Plaintiff does not plead particularized facts showing that Defendants knew their statements were false when made.

*September 2021.* Plaintiff claims that "Defendants knew or deliberately disregarded that their September 2021 statements were false and misleading" because "Defendants knew that 2Q21 results were substantially impacted by early renewal activity." Opp. at 10. But Plaintiff cites no facts to support this argument. *Id.* Plaintiff also asserts that "Defendants actually knew that the amount, size, and impact of early renewals on Amplitude's 2Q21 financial results was a 'key concern.'" *Id.* Yet it fails to allege any details regarding what Defendants "actually knew." And the "key concern" quote comes from a third-party analyst report recounting the analyst's "conversations with investors," so is irrelevant to what Defendants knew or did not know. ¶ 79.[8]

---

[7] Defendants did not fail to address Plaintiff's purported "scheme" claim because no such claim is pled. Opp. at 2. While the Supreme Court in *Lorenzo v. SEC*, 587 U.S. 71, 80 (2019), acknowledged that there may be *overlap* among the different subsections of Rule 10b-5, scheme claims under Rule 10b-5(a) and (c) must "encompass[] conduct beyond those misrepresentations or omissions" challenged under Rule 10b-5(b). *In re Robinhood Ord. Flow Litig.*, 2022 WL 9765563, at *13 (N.D. Cal. Oct. 13, 2022). Here, no deceptive conduct other than alleged misstatements is pled. As such, Plaintiff has not pled a "scheme" claim, and even if it did, it is entirely duplicative of the Rule 10b-5(b) claim and fails for the same reasons.

[8] Unlike here, the cases on which Plaintiff relies involve allegations of specific contemporaneous information known or recklessly disregarded by defendants that contradicted public statements. *See Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014) (defendant "ma[de] a detailed factual statement[] contradicting important data" she should have known); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1147 (N.D. Cal. 2017) (statements about user metric contradicted by data on user growth and

Gibson, Dunn & Crutcher LLP

***November and December 2021.*** Plaintiff contends that "Defendants knew their November 2021 and December 2021 statements were false and misleading" because Defendants "actively monitored expansion rates and knew or deliberately disregarded that those rates were contracting." Opp. at 11. This argument, again, is unsupported by any facts. Plaintiff identifies no fact showing that expansion "rates were contracting," let alone that Defendants "knew or deliberately disregarded" that information. Instead, Plaintiff asserts that "Skates was involved with almost any large account that was experiencing significant churn," and this "risk was entered into Amplitude's forecasting system," citing the FE allegations. *Id.* But Plaintiff concedes that it "does not allege that former employees knew Defendants' state of mind." Opp. at 8 n.12. The absence of facts about what Defendants knew at the time of the challenged statements distinguishes the cases Plaintiff cites, which involved detailed accounts from confidential witnesses with personal knowledge showing that defendants knew or recklessly disregarded specific contrary facts. *See Weston*, 669 F. Supp. 3d at 883 ("multiple confidential witnesses" identified "lagging internal metrics, including declining usage and retention rates among customers who signed up during the pandemic" that defendants admittedly tracked); *SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, 2024 WL 3579322, at *11 (N.D. Cal. July 29, 2024) ("Defendants were directly informed" of contrary information).

Plaintiff cannot bridge this pleading gap by relying on Defendants' general access to unspecified data. *See* Opp. at 11. As Plaintiff's own cases make clear, "[g]eneral allegations of defendants' . . . receipt of unspecified weekly or monthly reports are insufficient" to establish a strong inference of scienter. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005); *see also Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014).[9]

---

engagement); *Police & Fire Ret. Sys. of the City of Detroit v. Crane*, 87 F. Supp. 3d 1075, 1085 (N.D. Cal. 2015) (statements misleading because defendants did not disclose that contracts were restructured to accelerate revenue recognition); *In re Vaxart, Inc. Sec. Litig.*, 576 F. Supp. 3d 663, 673 (N.D. Cal. 2021) (plaintiff pled specific allegations that "defendants knew that the company had not been selected to receive federal funding," which contradicted public statements).

[9] Plaintiff also claims temporal proximity between the alleged false statements and corrective disclosures bolsters an inference of scienter. Opp. at 13–14. But most of Plaintiff's cases do not analyze temporal proximity for scienter purposes. *E.g.*, *Shankar v. Zymergen Inc.*, 2022 WL 17259057, at *1 (N.D. Cal. Nov. 29, 2022) (no scienter analysis because Section 11 case). Indeed, "timing alone, absent a showing of knowing falsity, is insufficient to support scienter." *In re Affirm Holdings, Inc. Sec. Litig.*, 2024 WL 3955453, at *12 (N.D. Cal. Aug. 26, 2024).

8

Gibson, Dunn & Crutcher LLP

**2.      The stock sale allegations do not establish a strong inference of scienter.**

Plaintiff relies on stock sales to establish scienter but concedes its stock sale allegations are "not sufficient on [their] own." Opp. at 12. Because the Complaint offers nothing else on which to base an inference of scienter, this admission is dispositive.[10] In any event, the stock sales are not suspicious because (1) Defendants sold only a small percentage of their total holdings, and (2) the sales were made when executives would be expected to sell (*i.e.*, in a direct listing IPO). Mot. at 13–14. Plaintiff ignores the latter argument, and baselessly asks the Court to disregard the former.

Specifically, Plaintiff asks the Court to focus on "the sheer volume of sales," implying that the Court can ignore the percentage of stock sold. Opp. at 12. As Plaintiff's own authority establishes, to determine whether stock sales are unusual or suspicious, courts look at (1) the amount and percentage of stock sold; (2) the timing; and (3) consistency with prior sales. *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004). Plaintiff relies on *Oracle* to argue that "courts should give 'less weight' to the fact sales 'may represent a small portion of the defendant's holdings' if the amount of money made from the sale is sufficiently high in magnitude." Opp. at 12. But *Oracle* involved a "novel situation" where the CEO's sale of "$900 million worth of stock"—"a truly astronomical figure"—represented only 2.1% of his holdings. 380 F.3d at 1232. The court also considered that the CEO had not sold any shares in the previous five years, he sold only one month before the bad news was revealed, and he had access to internal databases that included sales information and admitted that the company knew how much product was sold "in the last hour around the world." *Id.* at 1231–32. None of these circumstances are present here.

Plaintiff further asks the Court to ignore the small percentage of stock sold by Defendants, arguing that Defendants used information outside of the Complaint to calculate their total holdings, including Class B shares. *See* ECF 58-1 at 4–5 (discussing Exhibit 2, the Company's Form S-1/A). Plaintiff claims that (1) the Court should not take judicial notice of SEC filings establishing stock holdings, and (2) the percentage of shares sold is a disputed fact. *Id.* at 5. Plaintiff is wrong. Courts

---

[10]  As an aside, Plaintiff claims the non-defendant executives' sales support an inference of scienter, without explaining how such sales could possibly establish state of mind for defendants. Opp. at 13. Further, there is no authority for Plaintiff's illogical and circular assertion that stock sales "by executives or directors, mean[s] they had insider knowledge." Opp. at 13.

9

in this district routinely take judicial notice of SEC filings, including Form 4s and proxy statements, even when those documents are not referenced in the pleadings. *See, e.g., In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 988 (N.D. Cal. 2017); *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *4 (N.D. Cal. Nov. 27, 2018). Nor is the percentage of shares sold or the amount of Defendants' total holdings in dispute—the calculations are based on information in the Complaint and documents incorporated by reference or subject to judicial notice.[11] It is clear why Plaintiff urges the Court to disregard this information: Plaintiff tacitly admits it omitted Defendants' Class B shares to artificially inflate the percentages of stock sold. *See* Opp. at 12 n.13.

Plaintiff's other stock sale arguments similarly fail. Plaintiff asserts it "does not need to show prior stock sales . . . to show that the timing was suspicious." Opp. at 12. That is not the law. "Even where—as here—the class period begins at a company's IPO, Plaintiffs are not relieved of the burden of pleading a prior trading history." *Reckstin Fam. Tr. v. C3.ai, Inc.*, 2024 WL 734497, at *21 (N.D. Cal. Feb. 22, 2024). Plaintiff also besmirches the direct listing process generally as "itself suspicious." Opp. at 13. But Plaintiff pleads no facts to support this argument. And, indeed, the SEC has endorsed direct listings as proper. *See* Exchange Act Release No. 34-90768 (Dec. 22, 2020).

## C. Plaintiff Fails to Plead Loss Causation

Plaintiff ignores Defendants' arguments, which established that the "only new fact the market learned on February 16, 2022, was that Amplitude was growing at a slower rate than previously projected." *Compare* Opp. at 14, *with* Mot. at 15. It defies common sense that a disclosure about *future* financial performance "corrected" prior statements about *past* performance. Plaintiff merely alleges the disclosure of "disappointing financial" guidance, which is "insufficient to establish loss causation as a matter of law." *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014).

## III.   CONCLUSION

The Court should dismiss the Complaint in its entirety and with prejudice.

---

[11] As the Form S-1/A demonstrates, total ownership is easy to calculate. Skates held 7,041,146 shares of common stock and 1,876,596 exercisable options, for 8,917,742 in total holdings. Ex. 2 at 174. Because he sold 600,000 shares during the Class Period, ¶ 60, he sold ~7% of his total holdings. Similarly, Vuong held 278,251 shares of common stock and 1,414,082 exercisable options, for 1,692,333 in total holdings. Ex. 2 at 174. Because Vuong sold 300,620 shares during the Class Period, ¶ 60, he sold ~17% of his total holdings.

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:24-CV-00898-VC

DATED: August 30, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: */s/ Jessica Valenzuela*
    Jessica Valenzuela

*Attorneys for Defendants Amplitude, Inc.,
Spenser Skates, and Hoang Vuong*

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:24-CV-00898-VC