GIBSON, DUNN & CRUTCHER LLP
JESSICA VALENZUELA, SBN 220934
    jvalenzuela@gibsondunn.com
JEFF LOMBARD, SBN 285371
    jlombard@gibsondunn.com
310 University Avenue
Palo Alto, California  94301-1744
Telephone:    650.849.5300
Facsimile:    650.849.5333

BRIAN M. LUTZ, SBN 255976
    blutz@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, California  94111-3715
Telephone:    415.393.8200
Facsimile:    415.393.8306

*Attorneys for Defendants*
*Amplitude, Inc., Spenser Skates,*
*and Hoang Vuong*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AMPLITUDE, INC., SPENSER SKATES, and HOANG VUONG,<br><br>Defendants. | CASE NO. 3:24-cv-00898-VC<br><br>CLASS ACTION<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**HEARING:**<br><br>Date:        December 19, 2024<br>Time:        10:00 a.m.<br>Location:   Courtroom 04<br><br>Date Action Filed: February 14, 2024 |

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-00898-VC

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 19, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Northern District of California, San Francisco Courthouse, Courtroom 4, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Amplitude, Inc. ("Amplitude" or the "Company"), Spenser Skates, and Hoang Vuong (together, the "Individual Defendants," and collectively with Amplitude, "Defendants"), through their undersigned counsel, will, and hereby do, move to dismiss the Second Amended Complaint for Violation of the Federal Securities Laws (Dkt. 64) (the "SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).  This motion is based on this Notice, the supporting Memorandum of Points and Authorities, the declaration of Jessica Valenzuela and corresponding exhibits attached thereto, the complete files and records in this action, and any additional materials and argument as may be considered in connection with the hearing.

The Court previously dismissed the prior complaint (Dkt. 55), "[b]ecause the relevant material information was disclosed to investors" (Dkt. 63 ("Order") at 2); Amplitude did not say anything "plausibly misleading" (*id.* at 4); and the prior complaint did not "contain allegations giving rise to a strong inference" that Defendants "made misleading statements intentionally or with deliberate recklessness" (*id.*).  Defendants seek dismissal of the SAC with prejudice for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), because Plaintiff Chicago & Vicinity Laborers' District Council Pension Fund ("Plaintiff") has failed to allege any new facts in the SAC—much less ones that cure the deficiencies previously identified by the Court in its Order.  Because the SAC yet again fails to plead violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act, under the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Federal Rule of Civil Procedure 9(b), and because Plaintiff has shown that it cannot cure these deficiencies, the Court should dismiss the SAC with prejudice because further amendment would be futile.

DATED: November 13, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jessica Valenzuela*
    Jessica Valenzuela

*Attorneys for Defendants Amplitude, Inc.,*
*Spenser Skates, and Hoang Vuong*

Gibson, Dunn &
Crutcher LLP

3

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-00898

**TABLE OF CONTENTS**

**Page**

I.      STATEMENT OF THE ISSUES TO BE DECIDED..................................................1

II.     INTRODUCTION .................................................................................................1

III.    BACKGROUND ..................................................................................................2

        A.      Amplitude Accurately Described the Company's Strong Growth in the IPO .............2

        B.      Amplitude Disclosed Risks to its Performance and Future Success...........................3

        C.      Investors Were Aware That Amplitude's Growth Rate Was Slowing .........................4

        D.      The Court Dismisses Plaintiff's Inadequate Complaint................................................4

IV.     LEGAL FRAMEWORK .......................................................................................6

V.      ARGUMENT ........................................................................................................6

        A.      Plaintiff Fails to State a Claim Under Section 10(b) and Rule 10b-5..........................6

                1.      The SAC Fails to Plead an Actionable Misstatement or Omission ..................6

                        a.      Defendants' September 2021 Statements Were Not False or Misleading.......................................................................................6

                        b.      Defendants' November and December 2021 Statements Were Not False or Misleading...............................................................9

                2.      Plaintiff's Scheme Liability Allegations Fail ..................................................11

                3.      Plaintiff Also Fails to Adequately Allege Scienter.........................................12

                4.      The SAC Fails to Plead Loss Causation ..........................................................15

VI.     CONCLUSION....................................................................................................15

Gibson, Dunn & Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-00898

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accuray, Inc. Sec. Litig.*,
757 F. Supp. 2d 936 (N.D. Cal. 2010) ...................................................................................14

*In re Aqua Metals, Inc. Sec. Litig.*,
2019 WL 3817849 (N.D. Cal. Aug. 14, 2019)........................................................................10

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020)..............................................................................................6, 15

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ................................................................................14

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
2019 WL 6877195 (N.D. Cal. Dec. 17, 2019).........................................................................7

*Desai v. Deutsche Bank Sec. Ltd.*,
573 F.3d 931 (9th Cir. 2009)............................................................................................11, 12

*Fadia v. FireEye, Inc.*,
2016 WL 6679806 (N.D. Cal. Nov. 14, 2016)........................................................................14

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
2018 WL 4181954 (N.D. Cal. Aug. 31, 2018)........................................................................10

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014)..................................................................................................15

*Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*,
39 F.4th 1092 (9th Cir. 2022) ..................................................................................................7

*In re Nektar Therapeutics*,
2020 WL 3962004 (N.D. Cal. July 13, 2020).........................................................................12

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020)............................................................................................11, 13

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014)...........................................................................................14, 15

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)...................................................................................................................7

*In re Overstock Sec. Litig.*,
119 F.4th 787 (10th Cir. 2024) ...............................................................................................12

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014)..................................................................................................13

Gibson, Dunn & Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-00898

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021)..................................................................................................13

*In re Robinhood Ord. Flow Litig.*,
2022 WL 9765563 (N.D. Cal. Oct. 13, 2022)..........................................................................11

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008)....................................................................................................14

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
485 F. Supp. 3d 1113 (N.D. Cal. 2020) .....................................................................................9

*Shenwick v. Twitter, Inc.*,
282 F. Supp. 3d 1115 (N.D. Cal. 2017) ...................................................................................13

*Simpson v. AOL Time Warner Inc.*,
452 F.3d 1040 (9th Cir. 2006)..................................................................................................12

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001) .....................................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .................................................................................................................13

*In re Twitter, Inc. Sec. Litig.*,
506 F. Supp. 3d 867 (N.D. Cal. 2020) .......................................................................................6

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994).....................................................................................................9

*Xiaojiao Lu v. Align Tech., Inc.*,
417 F. Supp. 3d 1266 (N.D. Cal. 2019) ...................................................................................11

*Yaron v. Intersect ENT, Inc.*,
2020 WL 6750568 (N.D. Cal. June 19, 2020) .........................................................................15

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009).................................................................................................6, 13

**Statutes**

15 U.S.C. § 78u-4(b)..................................................................................................................6

15 U.S.C. § 78u-4(b)(2) ...........................................................................................................13

**Other Authorities**

Exchange Act Release No. 34-90768 (Dec. 22, 2020) .......................................................12

Gibson, Dunn & Crutcher LLP

iii

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-00898

## I.      STATEMENT OF THE ISSUES TO BE DECIDED

1.      Whether Plaintiff's claim under Section 10(b) of the Exchange Act should be dismissed with prejudice for failure to plead falsity, scienter, and loss causation.

2.      Whether Plaintiff's claim under Section 20(a) of the Exchange Act should be dismissed with prejudice for failure to plead a primary violation of the Exchange Act.

## II.      INTRODUCTION[1]

Plaintiff has failed to cure the deficiencies that led the Court to dismiss its prior complaint—and Plaintiff's feeble effort shows that further amendment would be futile.  The Court ruled that the statements Plaintiff challenged were not false or misleading, and Plaintiff had failed to plead facts showing otherwise.  The Court also held that Plaintiff failed to plead facts showing that Defendants acted with fraudulent intent.  Rather than identify any new facts showing that Amplitude's statements were false or misleading, or demonstrating scienter, Plaintiff relies on essentially the same allegations once more.  The SAC should be dismissed with prejudice.

Plaintiff's theory, yet again, is that statements Amplitude made about its performance in Q2 and Q3 of 2021 and about its land and expand sales strategy were revealed to be false when Amplitude revised its forward-looking financial guidance for 2022.  The SAC challenges a subset of the prior challenged statements, using slightly different words to allege the same omission-based theory of fraud the Court already rejected.  Plaintiff's attempt at amendment consists mainly of longer quotes from the *same* statements pled in the prior complaint, general background and information explaining how direct listings work, and commentary by analysts and other market participants about the same Company disclosures attacked in the prior complaint.  *None* of these allegations, however, contain any facts showing that any challenged statement was false or misleading or the Individual Defendants knew that.

Indeed, this Court has already recognized that Amplitude shared the information with investors that Plaintiff claims was concealed, Order at 2, and Plaintiff does not allege that any different information was concealed in the SAC.  Remarkably, the former employee ("FE") allegations on which

---

[1] Citations to "¶__" or "¶¶__" refer to paragraphs of the SAC.  Citations to "Ex.__" are to the Declaration of Jessica Valenzuela filed concurrently herewith.  Citations to "App'x" refers to Appendix A attached hereto.  Unless stated otherwise, all emphasis is added and all internal citations and quotations are omitted.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-00898

Gibson, Dunn & Crutcher LLP

Plaintiff's prior complaint was based—and which the Court found insufficient—remain *unchanged*. The SAC also repeats the scienter allegations this Court found did "not come close" to meeting the PSLRA's exacting standard. *Id.* at 4–5. Plaintiff's new language explaining that direct listings, unlike traditional IPOs, allow existing investors to sell stock immediately when the company goes public, is simply a rehash of the stock sale allegations the Court previously rejected as "not suspicious." *Id.*

At bottom, Plaintiff's slightly new characterization of old facts does not change the outcome. The SAC remains deficient for the same reasons previously identified by the Court:  it fails to plead falsity and scienter with particularity under the PSLRA and Federal Rule of Civil Procedure 9(b).  The SAC should be dismissed, and this time with prejudice.

### III.    BACKGROUND

Amplitude sells digital optimization software that provides businesses with insights into consumers' behavior on digital platforms or "apps."  ¶ 4.  Spenser Skates co-founded Amplitude and is the Company's Chief Executive Officer.  ¶ 38.  During the relevant period, Huong Vuong was Amplitude's Chief Financial Officer.  ¶ 39.

### A.    Amplitude Accurately Described the Company's Strong Growth in the IPO

On August 30, 2021, Amplitude filed a Form S-1 registration statement in connection with its planned direct listing.  ¶ 6.  The S-1 accurately described the Company's land and expand sales strategy—a ubiquitous sales model used by software-as-a-service (or SaaS) companies—that seeks to land new customers with an initial use case and then expand the relationship over time. *See* ¶ 9; Ex. 1 at 10, 66.  Amplitude also disclosed the specific metrics that "communicate the . . . success" of this sales strategy. *See* ¶ 10.  As the S-1 explained, as of December 31, 2020 and June 30, 2021, Amplitude "had 262 and 311 customers, respectively, that each represented greater than $100,000 in [annual recurring revenue or ARR], representing a 26% and 40% increase year-over-year" and "15 and 22 customers . . . that each represented greater than $1 million in ARR, up 36% and 69% year-over-year." Ex. 1 at 67–68.  The Company further disclosed that its net retention rate or NRR, which tracks ARR from existing customers over the trailing 12 months and reflects the expansion of existing customer accounts, was 119%. *Id.* at 67.  The SAC does not allege that any of these metrics were false or misleading.

Gibson, Dunn & Crutcher LLP

2

**B.      Amplitude Disclosed Risks to its Performance and Future Success**

Despite its growth trajectory, Amplitude was careful in the S-1 to make clear that "past results may not be indicative of [its] future performance." Ex. 1 at 20. Indeed, the S-1 provided detailed disclosures about the myriad risks that *could* impact Amplitude's performance, making clear there was no guarantee the Company would be successful in the future. Among other things, it disclosed that:

- The Company's "business depends on [its] current customers renewing their subscriptions and purchasing additional subscriptions . . . [and] attracting new customers," *id.* at 12;

- "Our subscription model . . . makes it difficult for us to rapidly increase our revenue through additional sales in any period, as revenue from new customers must be recognized over the applicable subscription term," *id.* at 22;

- The Company's "revenue growth rate may decline," *id.* at 19;

- The Company's "revenue growth could slow or our revenue could decline for a number of reasons," *id.*; and

- The Company expected "fluctuations in our financial results, making it difficult to project future results," *id.* at 12.

Amplitude also warned investors that expansion with existing customers would not happen immediately—rather, it would take years. At its Investor Day on September 14, Vuong cautioned that the Company did not "know exactly" when the land and expand sales strategy would result in growth from any particular customer, saying "it depends . . . on the [client]" and it could "happen over [] months *or years*." Ex. 3 at 30–31. He added that "sometimes you can see people expanding to that $1 million *in a year*. *Sometimes it may take them five years* . . . we're in it for the long run with them." *Id.* at 30. He also noted that "it'll take some time." *Id.* at 30. Far from touting land and expand as a guarantee of short-term growth, Skates provided examples of customer expansion that took place over *three*, *five*, and *six years*. ¶ 49. Nor did Amplitude guarantee that it would not lose business. Vuong disclosed that customer "churn . . . happened post-COVID." Ex. 3 at 31; *see also id*. at 30; ¶ 72 ("Amplitude experienced elevated levels of churn . . . amid the pandemic.").

On September 21, 2021, Amplitude released its financial results for Q2 2021, disclosing 66% year-over-year revenue growth, 51% year-over-year customer growth, and NRR of 119%, and making clear that Q2 results were "driven in part by strong customer upsells and some early customer renewal." ¶¶ 56, 58; Ex. 4 at 3. During that day's earnings call, Skates provided more examples of customers

that took *two to three years* to expand.  Ex. 4 at 5.  And, despite Q2's strong growth, Vuong cautioned investors that they should not "pay so much attention to every quarter in terms of customer adds or additions or changes" because the Company takes a longer view: "*it's really more about the longer term* of like we're gaining momentum in terms of winning more customers . . . and then, obviously getting them to expand." *Id.* at 10.

The Company went public through a direct listing on September 28, 2021.  ¶ 24.

**C.    Investors Were Aware That Amplitude's Growth Rate Was Slowing**

While the Company continued to grow, it was transparent that it expected revenue growth to slow.  On November 9, 2021, Amplitude released financial results for Q3 2021, disclosing 72% year-over-year revenue growth.  ¶ 75; Ex. 5 at 1.  Vuong told investors that Q4 revenue was expected to grow 55% year-over-year and forecasted that Amplitude was "well-positioned to grow 2022 revenue over 40%."  Ex. 6 at 7, 8; ¶ 78.  Vuong reminded investors of the customer "churn . . . from COVID" that impacted previous quarters.  *Id.* at 11.  Analysts noted that Amplitude's Q4 revenue guidance showed a "significant deceleration" in growth, Ex. 7 at 1, to "low-single digit, which is materially below the strong double-digit sequential growth" from "the last several quarters," Ex. 6 at 13.

On February 16, 2022, Amplitude released financial results for Q4 2021.  ¶ 103.  It lowered guidance for FY22 revenue growth to a range of 35-40%, below the "over 40%" projection made the prior quarter.  ¶¶ 78, 103.  Investors reacted negatively to this revised guidance, and Amplitude's stock dropped more than $24 per share on February 17, 2022, closing "down nearly 59%."  ¶ 108.

**D.    The Court Dismisses Plaintiff's Inadequate Complaint**

Plaintiff filed its original complaint on February 14, 2024.  It amended that complaint on June 13, 2024, alleging that 21 different statements about the Company's sales strategy and growth were misleading because Defendants purportedly failed to disclose that: (1) "Amplitude's land and expand strategy was years away from significantly accelerating the expansion of revenue among its legacy or its newer clients"; (2) "Amplitude was not continuing to benefit from COVID-19 tailwinds, nor was it continuing to see accelerating growth and strong demand momentum from customers"; and (3) "the magnitude of the impact of early customer renewals on reportedly strong 2Q21 financial results substantially bolstered the appearance of strong growth and demand and hurt expected revenue that

Gibson, Dunn &
Crutcher LLP

4

would have materialized in future quarters." Dkt. 55 ¶ 12; *see also id.* ¶¶ 45, 67, 77.

Defendants moved to dismiss the amended complaint because Plaintiff failed to allege falsity, scienter, and loss causation with particularity under the PSLRA. *See* Dkts. 56, 61. The Court granted Defendants' motion on falsity and scienter grounds, and did not address loss causation. The Court held that the amended complaint did "not sufficiently plead any actionable misleading statements or omissions" because the allegedly omitted information had been disclosed. Order at 1–2. Specifically, the Court found that "Amplitude did communicate to investors that it could take years to scale up individual accounts" and "also disclosed . . . that its Q2 results were driven by early renewals." *Id.* at 2. The Court also found that the FE allegations did not establish that any statement was false or misleading. *Id.* at 3. The Court further held that "[m]ost of the allegations in the complaint that the plaintiffs argue show scienter do not come close to doing so." *Id.* at 4. "[T]he stock sales were not suspicious," and while "the confidential witness statements come closer," they "ultimately fail to support a strong inference of scienter." *Id.* at 4–5. Plaintiff was given leave to amend. *Id.* at 5.

Plaintiff filed the SAC on October 23, 2024. The SAC challenges nine statements (set forth in full in Appendix A), again alleging that Defendants misled investors about customer demand and growth because they purportedly "failed to disclose" that: (1) "Land & Expand was not delivering growth results at a faster and accelerating pace, and the Company's expansion timelines would likely still take years (not months or weeks) to drive expansion of revenue"; (2) "demand for Amplitude's products was slowing as customers began to spend less on Amplitude products and were cancelling or reducing contractual commitments"; and (3) "the expansion and early renewals that occurred in 2Q21 not only substantially bolstered the appearance of strong growth and demand but also risked cannibalizing revenue from future quarters." ¶ 22; *see also* ¶¶ 61, 86, 99. Although using slightly different words, this is same theory of fraud alleged in the prior Complaint, except Plaintiff has abandoned claims that Amplitude purportedly failed to disclose that it was not continuing to benefit from COVID-19 tailwinds. *Compare* Dkt. 55 ¶ 12 *with* ¶ 22. The SAC does not add any new facts to show any challenged statement was false or misleading or that Skates or Vuong acted with scienter. *See* Ex. 9 at ¶¶ 44, 87.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-00898

## IV.    LEGAL FRAMEWORK

Section 10(b) claims are subject to heightened pleading standards, which require plaintiffs to plead falsity, scienter, and loss causation with particularity. *In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 878–79 (N.D. Cal. 2020); *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 791 (9th Cir. 2020). Under the PSLRA, a complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," and, for each alleged misstatement, must also "state with particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b). The SAC does not satisfy the PSLRA's "exacting pleading requirements." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990–91 (9th Cir. 2009).

## V.    ARGUMENT

### A.    Plaintiff Fails to State a Claim Under Section 10(b) and Rule 10b-5

Plaintiff again fails to adequately plead falsity, a purported scheme to defraud, scienter, and loss causation. The SAC does not allege any new facts—much less facts that cure the fatal defects identified in the Order—and should be dismissed with prejudice.

#### 1.    The SAC Fails to Plead an Actionable Misstatement or Omission

##### a.    Defendants' September 2021 Statements Were Not False or Misleading

Plaintiff challenges statements in September 2021 regarding Amplitude's performance and customer growth in Q2 2021. ¶¶ 51, 56–58, 60; App'x Nos. 1–5. This includes remarks that Amplitude "continue[s] to see strong customer momentum," ¶ 51, had "strong demand for the Amplitude Digital Optimization System," ¶ 56, and "customer demand was exceptional," ¶ 57. Plaintiff alleges these statements were misleading because Defendants purportedly failed to disclose that the Company was "not delivering growth results at a faster and accelerating pace as a result of the pandemic," "the Company's expansion timelines would likely still take years (not months or weeks)," and "the expansion and early renewals that occurred in 2Q21 not only substantially bolstered the appearance of strong growth and accelerating demand but also risked cannibalizing revenue from future quarters." ¶ 61(a), (b). However, (1) these statements were true, as evidenced by the metrics disclosed by Defendants; (2) Plaintiff does not identify any undisclosed fact that contradicts or renders the statements misleading; and (3) in every instance, the Company disclosed the allegedly concealed facts,

Gibson, Dunn & Crutcher LLP

6

as the Court previously recognized.  *See* Order at 1–4.

First, Plaintiff still cannot allege that the Company did not see "strong customer momentum," ¶ 51, "accelerating growth in customer accounts," *id.*, and "strong demand" in Q2 2021, ¶¶ 56, 57.[2] *See* Ex. 3 at 25 (customers grew 51% year-over-year; customers representing $100,000 and $1 million in ARR grew 40% and 69% year-over-year); Ex. 4 at 6.  The SAC never alleges that the Company misstated its Q2 results or that *any* of these metrics are false.  *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *12 (N.D. Cal. Dec. 17, 2019) ("Plaintiff has failed to allege specific facts that demonstrate the falsity of Defendants' statements regarding [Defendants] revenue growth – because that revenue was, in fact, growing.").  Nor can Plaintiff allege that Defendants lied when they expressed their opinions that these metrics demonstrated "strong" momentum and demand.  *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 184–93 (2015) (holding that opinions are actionable only if: (1) the speaker does not honestly hold the stated opinion; (2) it includes an "embedded statement[] of fact" that is false; or (3) it omits facts that are necessary to make the opinion not misleading).[3]

Second, the SAC does not allege any fact that renders any statement false or misleading when made.  *See id.* at 194 (plaintiff must allege "facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context.").  Plaintiff continues to rely on the same FE allegations from the prior complaint in a futile effort to show these statements were misleading.  *See* ¶¶ 44, 87.  FE1 claims that "by the middle of November [2021], there was significant partial churn," ¶ 87(a), and FE2 claims that "by November 2021 . . . it became harder for Amplitude's clients to get budgets approved for incremental expenditure," ¶ 87(c).  However, as the Court previously recognized, these allegations "can't show that any statements made in September were false" because they "describe what was happening in Q4 and

---

[2] These statements (App'x Nos. 1–3), along with App'x Nos. 4 and 6–9, are also inactionable corporate optimism.  ¶¶ 58, 77, 82, 91, 93.  *See In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1077 (N.D. Cal. 2001) (phrases such as "robust," "solid," and "improved," were not actionable).  Puffery statements, like these, are not "objectively verifiable" but are "vague, generically positive" statements that investors do not rely upon.  *Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1099 (9th Cir. 2022).

[3] App'x Nos. 1–4 and 7–9 are also inactionable opinions.  ¶¶ 51, 56, 57, 58, 82, 91, 93.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-00898

'by November 2021[.]'" Order at 3. Since Plaintiff did not add *any* facts related to the FEs in the SAC, it has not cured this defect.

Finally, Plaintiff's "omission theory [still] fails because Amplitude shared the relevant information with investors." Order at 2. Plaintiff alleges that the September 2021 statements were misleading because Defendants failed to disclose "the Company's expansion timelines would likely still take years (not months or weeks)." ¶ 61(a). The Court rejected this same allegation in the prior complaint, finding the Company "communicate[d] to investors that it could take years to scale up individual accounts." Order at 2. Indeed, as early as Investor Day, "Vuong stated that Amplitude didn't 'know exactly' how long growth would take, and that sometimes accounts expanded to $1 million in a year but that sometimes it could take five years." *Id.* at 2; *see also* Ex. 3 at 30–31. "Skates [also] gave several examples of Amplitude customers who had scaled up their Amplitude accounts over periods ranging from three to six years." Order at 2; *see also* ¶ 49; Ex. 3 at 19, 20, 26. And on the September 28 earnings call, the Company highlighted even more examples of customer expansion taking years. Ex. 4 at 5.

Plaintiff continues to ignore the disclosures making clear that expansion could take years and, instead, rests its entire theory on statements taken out of context. For example, Plaintiff alleges Defendants said that, because of the pandemic, expansion "that previously took years," now takes "weeks." ¶ 50. Defendants said no such thing, as the full text of the referenced statement makes clear.[4] In response to an analyst's question about whether "the pandemic caused a structural change in demand given resulting digital transformations that have taken place," a Company executive said customers had transitioned to digital earlier than planned because of COVID:

> So as Hoang just mentioned, every company is a digital company on some level whether you were born out of the digital era or you're transforming your business around digital, everyone is either being disrupted or disrupting around digital. And I think that was already happening before the pandemic. The pandemic, as we know, just accelerated everything where digital transformation went from months or years down to weeks in some cases. And I think the beauty of Amplitude is that we are squarely in the middle of whatever a company's growth strategy is. Whether they're a digital first or whether they're transforming to digital first.

---

[4] Plaintiff also claims Skates said that "following a short initial sales cycle . . . , expansion happens quickly." ¶ 48. Skates said no such thing. Instead, he said "our goal is to land *new* customers quickly," referring to the timeline to land *new* customers—not to expand existing ones. ¶ 48; Ex. 3 at 23.

8

Gibson, Dunn & Crutcher LLP

*Id.* Plaintiff acknowledges this digital transformation, noting that "the Company's customers turned toward online digital options as business adapted to a remote environment." ¶ 5; *see also* ¶¶ 13, ¶ 49. This statement, about how quickly businesses needed to go digital during the pandemic, has nothing to do with expansion timelines for existing customers; neither it, nor any other statement in the SAC, says *land and expand* can happen within weeks. "Plaintiff may not simply 'cherry-pick[] portions of Defendants' statements'" and cannot "selectively ignore[] [Defendants'] statement and the surrounding context." *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1126 (N.D. Cal. 2020).

Plaintiff also fails to adequately allege that Defendants concealed that "the expansion and early renewals that occurred in 2Q21 not only substantially bolstered the appearance of strong growth and accelerating demand but also risked cannibalizing revenue from future quarters, including in FY22." ¶ 61(b). The Company never concealed this information. As the Court recognized, on the September 2021 earnings call, "Amplitude also disclosed to investors that its Q2 results were driven by early renewals." Order at 2. Indeed, as Plaintiff acknowledges, Vuong disclosed that "strong customer upsells and some early customer renewal" drove Q2 2021 results. ¶ 58. The Court also noted that "the complaint does not contain any allegations that would explain why 'driven by some early renewals' is false but 'substantially inflated by early renewals' is true." Order at 2. The SAC still offers no explanation. Nor does the SAC allege any facts supporting that "early renewals . . . risked cannibalizing revenue from future quarters." ¶ 61(b). But, in any event, the market knew that early renewals would impact future quarters,[5] as a UBS analyst noted: "We believe any deal pull-forward risk has been factored into the 3QF21 and 4QF21 revenue guide." ¶ 72.

### b. Defendants' November and December 2021 Statements Were Not False or Misleading

Plaintiff's claims based on similar statements in November and December 2021 suffer from the same flaws. Plaintiff alleges Vuong lied during the November 2021 earnings call when he said the Company had "accelerated revenue growth," ¶ 77, was "continuing the momentum we're seeing in digital optimization," *id.*, and "we continue to see great momentum in customers over $100,000 and

---

[5] It is common sense that if revenue is increased by customer renewals in one quarter, that same revenue will not be reflected in any future quarters. *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1417–18 (9th Cir. 1994) (no duty to disclose obvious or known facts).

9

Gibson, Dunn &
Crutcher LLP

over $1 million," ¶ 82; App'x Statement Nos. 6, 7.[6]  The SAC also claims Skates misled investors at a December 2021 UBS conference when he said that "the pandemic has really accelerated plans that were supposed to take maybe years into the course of months or weeks," ¶ 91, and that Vuong lied again during that same conference when he spoke about the Company's "accelerated growth," ¶ 93;[7] App'x Statement Nos. 8, 9.  Plaintiff claims these statements were false and misleading for the same reasons as the September 2021 statements and also because Defendants purportedly failed to disclose that Amplitude's customer demand was slowing.  *See* ¶¶ 86, 99.

First, these statements are not false or misleading.  The SAC does not allege that the Company did not see "accelerated revenue growth" or challenge the past results underlying Vuong's statements.  *See supra* at 7; Ex. 6 at 6 (revenue of $45.5 million, "representing 72% annual growth").  Indeed, as the Court previously recognized, Vuong's November statements about Q3 results were "made in reference to past results" and "made in the context of Vuong recounting Amplitude's Q3 numbers at a call about the company's Q3 earnings and thus was obviously in reference to Q3."  Order at 3–4.

The SAC also does not allege new facts about the state of the Company's business in November and December 2021 to show the statements were false or misleading.  Instead, Plaintiff relies on the *same* FE allegations to claim that "demand for Amplitude's products was slowing as customers began to spend less on Amplitude products and were cancelling or reducing contractual commitments." ¶ 86(b); ¶ 87.  FE1 claims that Amplitude experienced "significant partial churn," but provides no detail regarding any customer that churned or the amount of revenue impacted, if any.  ¶ 87(a).  While FE2 claims it was "more difficult" to sell Amplitude's products and that it "became harder" for customers to get budgets approved, FE2 does not actually claim that any specific customer could not get approval

---

[6] Plaintiff alleges that "[t]he statements specifically alleged to be false and/or misleading are identified in ¶¶ 61, 86, 99." ¶ 14, n.3.  However, the SAC also pleads that a statement by Vuong on November 30, 2021 quoted in Paragraph 88 is "false and/or misleading." ¶ 88.  The SAC's inconsistent allegations as to what statements form the basis of its claims is puzzle pleading, which alone is basis for dismissal. *See Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 2018 WL 4181954, at *6 (N.D. Cal. Aug. 31, 2018).  In any event, Vuong's explanation of Venmo's expansion says nothing about how long that took, much less how long expansion with *other customers* might take.  Vuong's statement did not create a misleading impression about the timeline for land and expand to drive customer expansion.

[7] It is not clear which portions of Vuong's statement in paragraph 93 are alleged to be false.  This is yet another example of puzzle pleading. *See In re Aqua Metals, Inc. Sec. Litig.*, 2019 WL 3817849, at *7 (N.D. Cal. Aug. 14, 2019) (dismissing claims due to "impermissible 'puzzle pleading'").

10

Gibson, Dunn &
Crutcher LLP

or that any specific sale fell through. ¶ 87(c).  In short, these vague musings are "short on the facts" and still do not show that any statement in November or December 2021 was false or misleading when made. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416 (9th Cir. 2020); *see also* Order at 4 (holding that November and December 2021 statements were not "plausibly misleading").

Plaintiff also continues to mischaracterize Skates's statement that "the pandemic has really accelerated plans that were supposed to take maybe years into the course of months or weeks." ¶ 91. Skates actually said: "we've seen a lot of interest [for] Amplitude, from customers because the pandemic has really accelerated plans that were supposed to take maybe years into the course of months or weeks.  And so, we've seen a lot of robust growth and that translate[s] to our customer base." *Id.*; *see also* ¶ 20.   Again, Plaintiff tries to contort a statement about potential customers' *digital transformation* into a statement about the timing of the land and expand strategy.  *See supra* 8–9. "[C]herry-picking" statements out of context is not sufficient to meet the PSLRA's high pleading burden.  *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1276 (N.D. Cal. 2019).

Finally, as discussed above, Defendants consistently shared with investors that land and expand could take years to bear fruit from existing customers, that it experienced customer churn in previous quarters, and that Q2 was impacted by early renewals.  *See supra* at 8–9; Ex. 6 at 6, 11; Ex. 8 at 3, 9. Amplitude disclosed the very information Plaintiff claims it concealed.

### 2.  Plaintiff's Scheme Liability Allegations Fail

Plaintiff alleges that Defendants engaged in a purported "scheme" by: (1) going public via a direct listing instead of an underwritten IPO; and (2) "pulling forward" contract renewals (and related revenue) from future quarters in Q2 2021.[8]  ¶¶ 12, 13.  To plead a scheme, Plaintiff must allege some deceptive or manipulative act beyond an alleged misstatement.  *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 938 (9th Cir. 2009).  Such conduct must involve "deception . . . to defraud" investors and must have "the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme."  *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1047–48 (9th Cir. 2006), *vacated on*

---

[8]  To the extent Plaintiff alleges that Defendants' "scheme" was comprised of alleged misrepresentations (*see* ¶ 12), it fails to state a claim as a scheme under Rule 10b-5(a) and (c) must "encompass[] conduct beyond those misrepresentations or omissions" challenged under Rule 10b-5(b). *In re Robinhood Ord. Flow Litig.*, 2022 WL 9765563, at *13 (N.D. Cal. Oct. 13, 2022).

11

Gibson, Dunn & Crutcher LLP

*other grounds*, 519 F.3d 1041 (9th Cir. 2008). Scheme liability claims are subject to heightened pleading requirements under Rule 9(b), which Plaintiff fails to meet here. *In re Nektar Therapeutics*, 2020 WL 3962004, at *13 (N.D. Cal. July 13, 2020).

**_Direct Listing_**. Plaintiff does not plead with particularity that Amplitude's decision to go public through a direct listing was deceptive. Amplitude's plan for a direct listing, and its reasons for doing so, were disclosed and widely known by investors and the public long before September 2021. Ex. 1 at 42–44; ¶¶ 12, 18, 64–66, 69, 119–20. In fact, Plaintiff concedes that Amplitude began discussing its plan for a direct listing in 2019. *See* ¶ 5. Plaintiff, thus, fails to plead that the alleged scheme was "undisclosed to the general public." *Desai*, 573 F.3d at 941; *see also In re Overstock Sec. Litig.*, 119 F.4th 787, 804 (10th Cir. 2024) (successful scheme claims "share an element that is absent here: secrecy."). At bottom, Plaintiff's position appears to be that all direct listings are inherently suspicious and thus constitute a fraudulent scheme under Section 10(b)—but that is not the law. *See, e.g.*, Order at 5 ("The plaintiffs cite no authority in support of their argument that a direct listing IPO is inherently suspicious."); *see also* Exchange Act Release No. 34-90768 (Dec. 22, 2020) (SEC endorsing direct listing as proper means of going public). There is nothing novel or unusual about direct listings; even Plaintiff acknowledges that six companies went public through a direct listing in 2021 alone. ¶ 122.

**_Early Contract Renewals_**. Plaintiff also fails to allege that Defendants engaged in any deceptive conduct by entering into early contract renewals with customers before the direct listing that "pulled-forward" revenue. ¶ 13. Again, Amplitude disclosed this practice on September 21, 2021, *before it went public*, explaining that its Q2 results were driven, in part, by "strong customer upsells and some early customer renewals that took place in the quarter." Ex. 4 at 6. As there was no deception about this fact, it cannot form the basis of a scheme claim. *Desai*, 573 F.3d at 941. Moreover, Plaintiff does not even plead facts to support that early renewals materially inflated the Company's financial results. As the Court previously held, this argument is supported only by "the vague allegation [attributed to FE1]," which Plaintiff has *not* augmented in the SAC, "that Amplitude 'had made a strong push to complete deals before' the IPO." Order at 2–3. Plaintiff's scheme liability claim fails.

### 3. Plaintiff Also Fails to Adequately Allege Scienter

Under the PSLRA, the Complaint must "state with particularity facts giving rise to a strong

Gibson, Dunn & Crutcher LLP

inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *Zucco*, 552 F.3d at 991. This is a "high burden," *Prodanova v. H.C. Wainwright & Co.*, LLC 993 F.3d 1097, 1108 (9th Cir. 2021), which requires "highly unreasonable omissions, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care," *Zucco*, 552 F.3d at 991. The Court must engage in a "comparative evaluation," and consider "competing inferences rationally drawn from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). An inference of scienter must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* Plaintiff largely relies on the *same* insufficient allegations as before—namely, statements attributed to former employees and stock sales. The SAC adds no facts on either front, so Plaintiff is no closer to pleading scienter than it was before.

As to the confidential witnesses, the SAC still fails to allege that either FE communicated or interacted with Skates or Vuong. ¶ 87; *see Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) (confidential witnesses must provide "first-hand knowledge regarding what the individual defendants knew or did not know" to be indicative of scienter). FE2 says nothing at all about Skates or Vuong. FE1 alleges that Skates attended "meetings" about "high profile customer accounts," ¶ 44(a), and that he "was involved with almost any large account that was seeing significant churn," ¶87(b). But FE1 is not alleged to have attended any of these meetings and provides no information about what was discussed—much less how anything purportedly discussed contradicted Defendants' statements. *See Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1149 (N.D. Cal. 2017). And FE1's allegations regarding the system used to forecast customer retention (¶ 87(b)) are conclusory: FE1 does not explain what information the system purportedly contained or how such information would have provided Skates or Vuong with knowledge that their statements were false or misleading. *Nguyen*, 962 F. 3d at 417 (confidential witness referenced "incident reports," but "complaint does not plead any details about these reports"). The Court's prior holding applies equally here: the FE allegations "say nothing about what Vuong knew or his state of mind" and fail to "describe with any specificity" facts suggesting Skates' scienter. Order at 4–5.

Plaintiff also continues to rely on Skates' and Vuong's sales of stock that largely occurred within the first 72 hours of Amplitude's direct listing. ¶ 100. Skates sold only 7% of his total shares,

13

and Vuong sold ~17%. *See* Ex. 2 at 4–5. Sales of this magnitude are not indicative of scienter. *See Fadia v. FireEye, Inc.*, 2016 WL 6679806, at *14 (N.D. Cal. Nov. 14, 2016). The Court has already held these same sales are "not suspicious" nor "out of line with prior trading practices." Order at 4–5; *see, e.g.*, *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 950 (N.D. Cal. 2010) ("All but one of the challenged stock transactions occurred during the IPO. This is not suspicious or unusual.").

***Core Operations.*** The SAC now invokes the "core operations inference" for the first time, asking the Court to infer scienter for Skates and Vuong because "Amplitude was virtually a one-product company," and Defendants knew or should have known that their statements were false or misleading. ¶¶ 125–26. This doctrine, under certain circumstances, may create an inference "that facts critical to a business's 'core operations' or an important transaction are known to a company's key officers." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 783–84 (9th Cir. 2008). However, plaintiffs still must allege "*specific information* conveyed to management and related to the fraud" that gives rise to an inference of fraudulent intent. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014). The SAC contains no such allegations. Rather, Plaintiff continues to rely on the *same* vague FE allegations that the Court already held insufficient. *See* Order at 5. Plaintiff also alleges, for the first time, that the Company monitored its "weekly learning users," which allegedly "shed light on a customers' likelihood of causing churn," and that "churn" is an important metric. ¶ 126. However, Plaintiff does not identify any customers that actually churned, still provides no detail about the state of "churn" at the time of the alleged misstatements, nor what contrary information the "weekly learning users" metric would have disclosed to Skates and Vuong. *See id.*; *see also* ¶ 87(a), (b).

***Motive.*** Plaintiff also now alleges that Defendants had a motive to use the direct listing to sell shares of Amplitude's stock while the price was purportedly artificially inflated. ¶¶ 117–24. This is simply a rehash of Plaintiff's deficient stock sale allegations, Order at 4–5, and scheme claim, *see supra* at 11–12. In any event, motive alone is insufficient to plead scienter. *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1069 (N.D. Cal. 2012).

The SAC simply contains no allegations that undermine the most plausible inference: Defendants disclosed accurate information about Amplitude's performance in Q2 and Q3 of 2021; disclosed the factors that contributed to that performance (*e.g.*, early contract renewals, COVID

Gibson, Dunn & Crutcher LLP

14

tailwinds); and shared their optimism around the land and expand strategy, while repeatedly disclosing that it may take years for expansion to materialize. The notion that Defendants planned a scheme to defraud on the back of this accurate information by going public through a direct listing—a plan they had discussed publicly for years—defies common sense. The SAC does not identify a single document that contradicts any public statement, nor does it plead any specific information that in any way undermines the accuracy of the Company's public disclosures. Instead, Plaintiff's fraud theory is based entirely on the drop in Amplitude's stock price in response to Defendants' decision to lower revenue guidance for FY22 in February 2022 from "over 40%" to a range of 35%–40%. But the Company *ultimately met its initial guidance, reporting revenue growth of 42%*, undermining any inference that it was misleading investors with prior, higher forecasts. Fraudsters do not *lower* investors' expectations; they seek to maintain a mirage of overperformance and tout unattainable metrics with knowledge of adverse information. Defendants did just the opposite here. The fact that analysts were disappointed and the stock dropped as a result is unsurprising, but it is *not* fraud.

### 4.    The SAC Fails to Plead Loss Causation

To plead loss causation, the Complaint must plead particularized facts establishing that "(1) the truth became known, and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated." *In re BofI*, 977 F.3d at 789. On February 16, 2022, the market learned for the first time only that Amplitude was growing at a slower rate than previously projected, but this risk was already known by investors. *See* Ex. 1 at 19; *see also* Ex. 6 at 13. A disclosed risk that ultimately materializes cannot establish loss causation. *See Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568, at *10 (N.D. Cal. June 19, 2020). Plaintiff merely alleges the disclosure of "disappointing financial" guidance, which is "insufficient to establish loss causation as a matter of law." *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014).[9]

### VI.    CONCLUSION

Defendants request that the Court dismiss the SAC in its entirety and with prejudice.

---

[9] Plaintiff fails to allege a primary violation of Section 10(b), so the Section 20(a) claim necessarily fails. *See* Order at 5; *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014).

15

Gibson, Dunn & Crutcher LLP

DATED: November 13, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jessica Valenzuela*
Jessica Valenzuela

*Attorneys for Defendants Amplitude, Inc., Spenser Skates, and Hoang Vuong*