GIBSON, DUNN & CRUTCHER LLP
JESSICA VALENZUELA, SBN 220934
    jvalenzuela@gibsondunn.com
JEFF LOMBARD, SBN 285371
    jlombard@gibsondunn.com
310 University Avenue
Palo Alto, California  94301-1744
Telephone:    650.849.5300
Facsimile:    650.849.5333

BRIAN M. LUTZ, SBN 255976
    blutz@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, California  94111-3715
Telephone:    415.393.8200
Facsimile:    415.393.8306

*Attorneys for Defendants*
*Amplitude, Inc., Spenser Skates,*
*and Hoang Vuong*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>                        Plaintiff,<br><br>        v.<br><br>AMPLITUDE, INC., SPENSER SKATES, and HOANG VUONG,<br><br>                        Defendants. | CASE NO. 3:24-cv-00898-VC<br><br>CLASS ACTION<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**HEARING**<br>Date:        December 19, 2024<br>Time:        10:00 a.m.<br>Location:    Courtroom 04<br><br>Date Action Filed: February 14, 2024 |

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-00898-VC

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 2

    A.   Plaintiff Fails to Plead Falsity ........................................................................... 2

        1.   Defendants' September 2021 Statements Were Not False or Misleading. ............................................................................................. 2

        2.   Defendants' November and December 2021 Statements Were Not False or Misleading. .................................................................................. 4

    B.   Plaintiff Fails to Plead Scheme Liability ........................................................... 6

    C.   Plaintiff Fails to Plead Scienter ......................................................................... 7

    D.   Plaintiff Fails to Plead Loss Causation ............................................................. 9

III. CONCLUSION ............................................................................................................. 10

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Accuray, Inc. Sec. Litig.*,
  757 F. Supp. 2d 936 (N.D. Cal. 2010) ...................................................................................8

*In re Affirm Holdings, Inc. Sec. Litig.*,
  2024 WL 3955453 (N.D. Cal. Aug. 26, 2024).......................................................................7

*In re Apple Sec. Litig.*,
  2020 WL 6482014 (N.D. Cal. Nov. 4, 2020)......................................................................5, 8

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008)..................................................................................................7

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020)..................................................................................................9

*In re Coinbase Glob., Inc. Sec. Litig.*,
  2024 WL 4053009 (D.N.J. Sept. 5, 2024) ..........................................................................8, 9

*Hampton v. Aqua Metals, Inc.*,
  2020 WL 6710096 (N.D. Cal. Nov. 16, 2020).......................................................................6

*Hayden v. Portola Pharms., Inc.*,
  2021 WL 3506614 (N.D. Cal. Aug. 10, 2021)........................................................................8

*Immanuel Lake v. Zogenix, Inc.*,
  2020 WL 3820424 (N.D. Cal. Jan. 27, 2020) ........................................................................3

*James v. Tempur Sealy Int'l, Inc.*,
  2019 WL 1599186 (N.D. Cal. Apr. 15, 2019) ........................................................................6

*Lorenzo v. S.E.C.*,
  587 U.S. 71 (2019)..................................................................................................................6

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
  2016 WL 7475555 (N.D. Cal. Dec. 29, 2016) ........................................................................4

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010)..................................................................................................8

*In re Overstock Sec. Litig.*,
  119 F.4th 787 (10th Cir. 2024) ..............................................................................................7

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012)..................................................................................................8

*In re Robinhood Ord. Flow Litig.*,
  2022 WL 9765563 (N.D. Cal. Oct. 13, 2022).........................................................................6

ii

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001)..................................................................................................3

*Sayce v. Forescout Techs., Inc.*,
2021 WL 1146031 (N.D. Cal. Mar. 25, 2021)........................................................................6

*Sec. & Exch. Comm'n v. Prakash*,
718 F. Supp. 3d 1098 (N.D. Cal. 2024) .................................................................................6

*In re Vaxart, Inc. Sec. Litig.*,
2023 WL 3637093 (N.D. Cal. May 25, 2023) .......................................................................6

*In re Vaxart, Inc. Sec. Litig.*,
576 F. Supp. 3d 663 (N.D. Cal. 2021) ...................................................................................2

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
29 F.4th 611 (9th Cir. 2022) ..................................................................................................4

*Xiaojiao Lu v. Align Tech., Inc.*,
417 F. Supp. 3d 1266 (N.D. Cal. 2019) .................................................................................5

*York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP Inc.*,
2024 WL 1327247 (N.D. Cal. Mar. 27, 2024).......................................................................2

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:24-CV-00898-VC

## I.    INTRODUCTION

Plaintiff's Opposition ("Opp.," Dkt. 68) confirms that it fails to cure the defects in the prior complaint.[1]  Plaintiff asks the Court to reconsider the *same* challenged statements based on the *same* allegations that this Court already ruled were inadequate to satisfy the heightened pleading requirements of the PSLRA and Rule 9(b).  Remarkably, *the Opposition does not identify a single new fact pled in the SAC*.  That is because there are none that save the SAC from the prior pleading defects.  The motion to dismiss should be granted, and with prejudice.

Plaintiff concedes that its theory is classic fraud by hindsight, arguing that the "February 2022 disclosures . . . establish[] material falsity."  Opp. at 2.  The Court already rejected this theory, finding that Defendants disclosed the allegedly concealed facts months earlier, including that Q2 2021 results were bolstered by "some early renewals" and it could take *years* for land and expand to bear fruit from existing customers.  Order at 2–3.  The SAC adds nothing to alter this conclusion.  Plaintiff also asserts, based on the *same* statements and supporting allegations the Court previously found insufficient, that Defendants failed to disclose the "impact" of early customer renewals.  But Plaintiff does not allege what the supposedly undisclosed impact was, much less what was known *at the time* of the challenged statements.

The Opposition also makes clear that Plaintiff has not pled scienter.  The SAC adds no facts that show fraudulent intent.  Plaintiff did not even bother to amend the allegations attributed to the two FEs, which the Court already found "fail to support a strong inference of scienter."  Order at 5.  Plaintiff also continues to point to stock sales during and after the Company's direct listing IPO, which the Court already found "were not suspicious."  *Id.* at 4–5.  Plaintiff's request that the Court infer scienter based on a "core operations" inference fares no better as it asks the Court to make illogical and unsupported inferences about management's knowledge of falsity without any particularized allegations showing how the unidentified information supposedly contradicts the Company's statements.

At bottom, Plaintiff seeks a do-over.  But the same deficient allegations that the Court already rejected do not somehow state a claim now.  The SAC should be dismissed with prejudice.

---

[1] Capitalized terms have the same meaning ascribed to them in Defendants' Motion ("Mot.," Dkt. 67).  Unless stated otherwise, all emphasis is added and all internal citations and quotations are omitted.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-00898-VC

Gibson, Dunn & Crutcher LLP

## II.    ARGUMENT

### A.    Plaintiff Fails to Plead Falsity

#### 1.    Defendants' September 2021 Statements Were Not False or Misleading.

Plaintiff's Opposition seems to argue that Amplitude's September 2021 statements regarding performance and customer growth (*see* App'x Nos. 1-5; ¶¶ 51, 56-58, 60) were false or misleading because, while it disclosed that Q2 2021 results were driven by "*some* early customer renewal[s]," Amplitude purportedly failed to disclose the *impact* of those early renewals.  Opp. at 4 (citing ¶ 107). But the Opposition makes clear that Plaintiff does not plead any particularized facts—much less *new* facts not previously alleged in the prior complaint—supporting this theory.

Plaintiff does not identify any statement where Defendants purportedly said that early customer renewals in Q2 2021 would not have any impact on future quarters' revenue.  The SAC alleges no facts at all about what was known internally in September 2021 about the impact of early renewals, no facts regarding how Defendants could even know the future impact of early renewals, and no facts about any other aspect of the business in September 2021 for that matter:[2] "the confidential witness statements that the plaintiffs cite . . . concern November 2021 and Q4, so cannot show that a statement about Q2 was false."  Order at 3.[3]  To plead falsity the SAC must "contain allegations of specific 'contemporaneous statements or conditions' that demonstrate the . . . false or misleading nature of the

---

[2] This distinguishes this case from the facts in *York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP Inc.*, where the court found that a statement that inventory was being reduced was misleading in light of contemporaneous facts that inventory was actually increasing "at the time" and defendants had "real-time knowledge" of that increasing inventory.  2024 WL 1327247, at *19 (N.D. Cal. Mar. 27, 2024); *see also In re Vaxart, Inc. Sec. Litig.*, 576 F. Supp. 3d 663, 670–71 (N.D. Cal. 2021) (announcement regarding "agreement with a major player" for "one billion vaccine doses" was adequately alleged to be false because complaint contained specific allegations that defendant "lacked the regulatory capacity, personnel, and wherewithal to produce even one dose.").

[3] Plaintiff claims that Vuong "downplayed" the "impact" of early renewals "on the quarter," Opp. at 3, but the Opposition does not address Defendants' argument that the SAC never challenges the Q2 2021 results nor the accuracy of the metrics disclosed by Defendants.  *See* Mot. at 7.  The performance metrics the Company disclosed prove Amplitude did in fact "continue to see strong customer momentum" and "[c]ustomer demand for Amplitude was exceptional" in Q2 2021.  ¶¶ 51, 57; *see* Ex. 3 at 25 (customers grew 51% year-over-year; customers representing $100,000 and $1 million in ARR grew 40% and 69% year-over-year); Ex. 4 at 6.  Plaintiff does not dispute this (nor could it).  Instead, Plaintiff mischaracterizes this argument as a "thinly veiled truth-on-the-market defense."  Opp. at 5. But Defendants' arguments demonstrate why the statements are not false in the first place, which is fatal to Plaintiff's Section 10(b) claim.  *See* Mot. at 7–8.

Gibson, Dunn & Crutcher LLP

statements *when made*."  *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001).  The SAC comes nowhere close to meeting this burden regarding the impact of early renewals.

Plaintiff also attempts to use Defendants' statements in February 2022 that "2Q21 results were in fact the product of a 'one-time' boost in demand, and 2Q21 was thus a 'stronger quarter than normal,'" to prove that statements made *five months earlier* were misleading.[4]  Opp. at 4.  This "is the very sort of fraud-by-hindsight" pleading "that the PSLRA was enacted to avoid."  *Immanuel Lake v. Zogenix, Inc.*, 2020 WL 3820424, at *8 (N.D. Cal. Jan. 27, 2020).  The SAC does not allege that these conclusions, which are *comparative* and made in light of the Company's subsequent performance, were known in September 2021.  Nor *could* those comparisons with future quarters have been made in September 2021.  In any event, Vuong disclosed in September 2021 that Q2 results benefited from "*some* early customer renewal."  ¶ 58.  Far from being some sort of admission, Vuong's later disclosure in February 2022 was consistent with his September statement.  As the Court previously found:

> [T]he plaintiffs describe Vuong's February 2022 statement that Q2's growth was "a stronger quarter than normal" because of "some early expansion" as an admission that "it was actually early renewals that had caused 2Q21 results," and argue that this admission supports an inference that Vuong knew his earlier statements were false.  But if "some" is strong enough to be an admission that shows that Vuong knew the earlier statements were misleading, it's unclear why it's too weak to constitute a disclosure of the impact of early renewals on the Q2 results.

Order at 3.  The Opposition pleads no new facts to change this conclusion.

Finally, Plaintiff argues that the September 2021 statements were misleading because Defendants allegedly failed to disclose "what a former employee ('FE') described as Defendants' strong push to complete deals before going public."  Opp. at 4.  But, again, the Court previously rejected this *same* argument, describing the *same* allegations attributed to FE1 in the SAC as a "vague allegation."  *See* Order at 2–3; Ex. 9 ¶ 87 (redline showing Plaintiff did not amend allegations attributed to FE1).  Plaintiff's attempt to relitigate the deficient allegation from its prior complaint fails.

---

[4] The Opposition incorrectly claims that Vuong "acknowledged the cause [of 2Q21 results] as 'a pull-forward in 2021.'"  *See* Opp. at 4 (quoting ¶ 114).  This statement, however, was made by the author of the cited article, *not* Vuong.  ¶ 114.

3

### 2.    Defendants' November and December 2021 Statements Were Not False or Misleading.

Plaintiff argues that the November and December 2021 statements (App'x, Nos. 6–9; ¶¶ 77, 82, 91, 93) "gave investors the false impression that accelerating growth was continuing," and that "expansions were accelerating from years to months or weeks." Opp. at 5, 7. The SAC plead no facts that these statements were false or misleading.

First, as to the theory that Amplitude misled investors into believing "accelerating growth was continuing," the SAC does not plead this was false in any way. Amplitude did have "accelerated revenue growth" and was "continu[ing] to see great momentum in customers over $100,000 and over $1 million." ¶¶ 77, 82. These statements were supported by the metrics the Company disclosed to investors. For example, Amplitude disclosed that customers representing $100,000 and $1 million in ARR grew 40% and 69% year-over-year, respectively. Ex. 3 at 25. In addition, it disclosed Q3 revenue of $45.5 million, "representing 72% annual growth." Ex. 6 at 6. Plaintiff does not allege or argue that these metrics were inaccurate or misstated in any way. Nor does it explain how statements about growth and momentum could have been misleading in light of these numbers. *See Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2016 WL 7475555, at *3 (N.D. Cal. Dec. 29, 2016) (plaintiff "failed to satisfy the PSLRA and Rule 9(b) pleading requirements" because it did not plead "contemporaneous facts that would establish a contradiction between the alleged materially misleading statements and reality").[5]

Plaintiff ignores these admittedly accurate metrics and instead argues that the context Vuong provided around Q3 performance (*e.g.*, that "we're seeing" momentum, and factors "are contributing" to growth) were somehow a commentary on the fourth quarter performance that was ultimately disclosed in February 2022. Opp. at 6 (quoting ¶¶ 77, 82). The Court already rejected this same argument, finding these statements "reference . . . past results" and "obviously [were] in reference to

---

[5] Plaintiff continues to argue that the short period of time between the alleged misstatements and the purported corrective disclosure in February 2022 supports the falsity of Defendants' statements. Opp. at 8. But "without more, temporal proximity alone does not satisfy the particularity requirements of Rule 9(b)." *See Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 622 (9th Cir. 2022). Nor could it here where the SAC does not even allege any misstatements in the first place.

4

Gibson, Dunn & Crutcher LLP

Q3."[6]  Order at 3–4; *see also* ¶ 77 ("[A]s we mentioned on our last call").

Second, as to the theory the Company misled investors to believe that "expansions were accelerating from years to months or weeks," the SAC fares no better.  The Opposition ignores entirely the arguments in Defendants' Motion establishing that Amplitude never said that "expansions" were accelerating from "years" to "months or weeks."  Mot. at 8–9, 11.  Rather, Amplitude repeatedly informed investors that customer expansions did in the past, and likely would in the future, take *years*. *See* ¶ 49; Ex. 3 at 19, 20, 26, 30–31; Ex. 4 at 5.  Based on these disclosures, the Court found that "Amplitude did communicate to investors that it could take years to scale up individual accounts."  Order at 2.  Plaintiff argues these disclosures about customer timelines are irrelevant because "Defendants told investors that expansion was occurring at a faster pace as a result of post-COVID tailwinds."  Opp. at 8 (citing ¶¶ 48–50); *see also id.* at 3.  In making this argument, Plaintiff still misinterprets statements about *customers transitioning their businesses to online at a faster rate* as statements about customers expanding their business with Amplitude.  *See* Mot. at 8–9, 11.  "[C]herry-picking" statements out of context does not meet the PSLRA's stringent pleading standards.  *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1276 (N.D. Cal. 2019).  This is no different than the arguments that the Court rejected in dismissing the prior complaint and is not supported by any new or different factual allegations.

Finally, Plaintiff argues that the November and December 2021 statements about Q3 results, ¶¶ 77, 82, potential customers' digital transformation, ¶ 91, and the Company's "accelerated growth," ¶ 93, were misleading because Defendants failed to disclose that "customers were finding it more difficult to afford Amplitude products," "deal reductions were already significant," and "post-COVID tailwinds had become headwinds."  Opp. at 6–7 (quoting ¶ 87).  But the SAC does not allege that any statement was materially misleading in light of these purported omissions.  *See* ¶¶ 61, 86 and 99.  Plaintiff relies on the exact *same* FE allegations as in the prior complaint.  Ex. 9 at ¶ 87 (showing

---

[6] This distinguishes the facts here from Plaintiff's authorities, as the Court previously noted. *See In re Apple Sec. Litig.*, 2020 WL 6482014, at *5 (N.D. Cal. Nov. 4, 2020) (statement referring to the previous quarter "provide[d] an illustration for [company's] present-tense description" where statement started with "[t]o give you a perspective"); Order at 4 (*Apple* holding "determine[d] based on context that statements plausibly referred to the present").

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:24-CV-00898-VC

Plaintiff did not amend the FE allegations). No new allegations were attributed to the FEs at all. *Id.* The previously deficient allegations cannot possibly be sufficient now.[7] *See* Order at 3–4. Plaintiff effectively asks the Court to reconsider its Order under the guise of an "amended" complaint that adds no new facts or material allegations. *See James v. Tempur Sealy Int'l, Inc.*, 2019 WL 1599186, at *4 (N.D. Cal. Apr. 15, 2019) (dismissing two causes of action because "Plaintiff has provided no new information in the amended complaint that would change the Court's ruling on these two claims").

## B.    Plaintiff Fails to Plead Scheme Liability

The Opposition also makes clear that Plaintiff has not pled a scheme claim. Plaintiff argues that Defendants engaged in a fraudulent scheme by (1) going public via a direct listing; (2) failing to disclose the impact of early renewals in Q2 2021; and (3) misrepresenting Amplitude's customer expansion timelines.[8] Opp. at 14. Plaintiff ignores that *all of this was disclosed*. The Company disclosed its plans to go public via a direct listing and its reasons for doing so, Ex. 1 at 42–44; ¶¶ 5, 12,

---

[7] Indeed, nothing attributed to the FEs shows that any November or December 2021 statement was misleading. Plaintiff argues that allegations about what FE1 recounts "in 4Q21" (*see* ¶ 87(b)) means "as early as October 2021." Opp. at 6. But that specific timing is not alleged and it is just as plausible that "in 4Q21" means late December *after* all of the challenged statements. *See Sayce v. Forescout Techs., Inc.*, 2021 WL 1146031 (N.D. Cal. Mar. 25, 2021) (confidential witness statements with general time frames such as "in August 2019" lack sufficient detail). Plaintiff also claims that "by the middle of November 2021, deal reductions were already significant." Opp. at 6 (citing ¶ 87). But that also is not alleged. FE1 alleges that Amplitude experienced "significant partial churn" in certain U.S. regions but provides no detail regarding any particular customer that churned, how many customers churned, or the amount of revenue impacted, if any. ¶ 87(a); *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096 at *15 (N.D. Cal. Nov. 16, 2020) (rejecting CW allegations that were "not specific enough"). Plaintiff also claims that FE2 reported that "customers were finding it more difficult to afford Amplitude products," Opp. at 6, but does not allege that any specific customer could not get budget approval or that any specific sale fell through. ¶ 87(c).

[8] Plaintiff cites *Lorenzo v. S.E.C..*, 587 U.S. 71 (2019), to argue that its scheme claim may be based on the same misrepresentations challenged under Rule 10b-5(b). *See* Opp. at 14. But *Lorenzo* does not stand for this proposition. Rather, it held that a defendant who did not *make* the statements, and thus could not be liable under Rule 10b-5(b), could still be liable under Rules 10b-5(a) and (c) for *disseminating* the false statements made by others. *Lorenzo*, 587 U.S. at 81; *see also In re Vaxart, Inc. Sec. Litig.*, 2023 WL 3637093, at *3 (N.D. Cal. May 25, 2023) (involving a scheme claim brought against a hedge fund defendant who did not make the alleged misstatements). Here, however, each of the Individual Defendants is the alleged maker of the challenged statements and, as such, the alleged scheme must "encompass[] conduct beyond those misrepresentation and omissions" challenged under Rule 10b-5(b). *In re Robinhood Ord. Flow Litig.*, 2022 WL 9765563, at *13 (N.D. Cal. Oct. 13, 2022); *cf. Sec. & Exch. Comm'n v. Prakash*, 718 F. Supp. 3d 1098, 1108, 1110 (N.D. Cal. 2024) (scheme adequately pled by alleging defendant's failure to investigate and address known issues *in addition* to making and disseminating alleged misstatements).

6

Gibson, Dunn &
Crutcher LLP

18, 64–66, 69, 119–20; that its Q2 2021 results were "driven in part by . . . some early customer renewal" (which would necessarily have some impact on future quarters), ¶¶ 58, 72; and that land and expand could take years to bear fruit from existing customers, ¶ 49; Ex. 3 at 19, 20, 26, 30-31; Ex. 4 at 5. These disclosures are fatal to Plaintiff's scheme claim. *See In re Overstock Sec. Litig.*, 119 F.4th 787, 804 (10th Cir. 2024) (successful scheme claims "share an element that is absent here: secrecy").

## C.    **Plaintiff Fails to Plead Scienter**

Plaintiff's Opposition also confirms the SAC fails to plead a strong inference that Skates or Vuong "made misleading statements intentionally or with deliberate recklessness." Order at 4. The Opposition recites the *same* allegations the Court previously found "do not come close" to pleading scienter, including the *same* FE allegations the Court determined "fail to support a strong inference of scienter" and that Plaintiff again concedes are irrelevant to "Defendants' state of mind."[9] *Id.* at 4–5; Opp. at 12, n.10. Without any particularized fact demonstrating Skates or Vuong's knowledge, Plaintiff attempts to plead scienter by invoking the "core operations inference" and Defendants' alleged financial motive, neither of which saves Plaintiff's claim.

***Core Operations.***    Plaintiff argues that it "would be absurd" to suggest that Defendants were unaware of the state of churn reported by the FEs given that (1) Amplitude Analytics provides "insight into how *its customers* can minimize churn," and (2) Amplitude considers churn to be a "key measure of success." Opp. at 13. As an initial matter, the SAC does not allege with specificity the purported "state of churn" at the time of the challenged statements. FE1 states that, "by the middle of November [2021], there was significant partial churn," but Plaintiff provides no detail about what that means: It does not allege any specific customer(s) churned; it does not allege the total number of customers that purportedly churned; and it does not allege the total amount of revenue, if any, that churned. Nor does the SAC allege that Amplitude uses the Amplitude Analytics tool to assess *its own business* or that, if it did use such tool, what information that would have revealed. To invoke the core operations

[9] Plaintiff again argues that the short period between the December 2021 statements and the February 2022 "corrective disclosures" bolsters an inference of scienter. Opp. at 12. The Court already rejected this argument. Order at 4 ("That the 'corrective disclosures' were made only a few months after the alleged misstatements also does not raise an inference of scienter in light of the various other disclosures . . . ."); *In re Affirm Holdings, Inc. Sec. Litig.*, 2024 WL 3955453, at *12 (N.D. Cal. Aug. 26, 2024) ("timing alone, absent a showing of knowing falsity, is insufficient to support scienter").

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CASE NO. 3:24-CV-00898-VC

inference, Plaintiff must plead with particularity the contrary facts that existed at the time management would be presumed to know them. *See Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989 (9th Cir. 2008) (finding that four stop-work orders amounting to tens of millions of dollars in revenue "were prominent enough that it would be 'absurd to suggest' that top management was unaware of them"). The SAC pleads no such facts, apparently asking the Court to infer not just knowledge on the part of the Individual Defendants, but the very existence of contrary facts too.[10] The core operations inference allows no such thing, and the sole case Plaintiff cites in support of its core operations arguments stands for no such thing.

In *Hayden v. Portola Pharms., Inc.*, 2021 WL 3506614 (N.D. Cal. Aug. 10, 2021), plaintiffs alleged that a company misled investors when it reported revenues from the sale of a drug without disclosing that those revenues would be reduced by product returns. The company disclosed its revenues as of the end of 2018, but it did not disclose that 90% of the reserves set aside for returns had already been used, and that customers still had over a year to return product. The complaint in *Hayden* also alleged the specific dollar amount of the reserves the company had set aside, and the specific dollar amount of returns that had been made as of the date of the challenged disclosures. *Id.* at *4–5. The SAC comes nowhere close to pleading this same level of detail about the purported churn that existed as of the date of the challenged statements. Simply concluding that Vuong and Skates would be aware of "the churn reported by the former employees," Opp. at 13, without pleading *any* detail whatsoever about the level of churn reported does not meet the strict pleading standards under the PSLRA.

***Motive.*** Plaintiff argues that Defendants were "highly motivated to inflate 2Q21 revenue and financial metrics" in making their September 2021 statements as "they stood to (and did) gain $47 million" by going public via a direct listing. Opp. at 10. The Court already found that Defendants' stock sales "were not suspicious." Order at 4–5. Thus, they cannot bolster any inference of scienter.

---

[10] Plaintiff's reliance on *In re Apple* is misplaced. *See* Opp. at 11. In that case, the plaintiffs pled particularized facts showing that the company possessed contemporaneous information regarding economic decline and trade tensions with China and weak demand for the company's most important product, which contradicted the CEO's statement that the company "was not experiencing pressure in China." *In re Apple Sec. Litig.*, 2020 WL 6482014, at *9, *12. Oddly, Plaintiff also cites *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010), but the court in that case found that defendants had not made a false statement, much less with scienter. *See* Opp. at 11.

Gibson, Dunn & Crutcher LLP

*See In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 950 (N.D. Cal. 2010). To the extent Plaintiff's argument is that Defendants had a motive to lie in order to ensure that the direct listing was successful, this too is insufficient. "[A]llegations of routine corporate objectives such as the desire to obtain good financing and expand are not, without more, sufficient to allege scienter." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012). Plaintiff cites an out-of-circuit district court case, *In re Coinbase Glob., Inc. Sec. Litig.*, 2024 WL 4053009 (D.N.J. Sept. 5, 2024), to argue that *one* court has found "the financial motive in a direct listing *bolstered* an inference of scienter." Opp. at 10. As Plaintiff must concede, the complaint in *Coinbase* did not rely solely on the financial motive presented by a direct listing to plead scienter. Rather, the complaint alleged specific information known by defendants that contradicted their public statements, such as statements in a letter to the SEC demonstrating knowledge of commingled customer assets and knowledge of the SEC's view that digital assets were securities. *In re Coinbase*, 2024 WL 4053009, at *15, *16. The SAC lacks any facts—particularized or otherwise—regarding the contrary information Vuong or Skates had knowledge of. Plaintiff comes nowhere close to pleading a cogent and compelling inference of fraudulent intent.

Indeed, Plaintiff never even attempts to explain how its fraud theory makes sense. The revised financial guidance disclosed in February 2022 did not reveal any issue or problem with the business nor did it render the prior, accurate statements about *past* performance in Q2 and Q3 2021 false or misleading. The most plausible inference is that Amplitude revised its guidance in February 2022 because it is difficult to predict precisely how customers will expand multiple quarters out. *See* ¶ 105 ("we're trying to give out guidance for a year, we're trying to figure out what the expansions are in the outer quarter"). The fact that Amplitude ultimately *met* its original guidance undermines any inference that Defendants that were trying to mislead investors months earlier. Mot. at 15.

**D.　　Plaintiff Fails to Plead Loss Causation**

Plaintiff appears to concede that the February 2022 revised guidance is not the alleged corrective disclosure. Opp. at 10, n.9 ("the allegations concern customer growth timelines, not revenue guidance"). Instead, Plaintiff argues that Defendants' disclosure "that expansions would take, not 'months or weeks,' but instead, 'years'" caused "the stock price decline." Opp. at 14. The fact that

Gibson, Dunn &
Crutcher LLP

customer expansions would take "years" could not possibly be a corrective disclosure, as Defendants had been telling investors exactly that fact since at least September 14, 2021, and repeatedly thereafter. *See* Mot. at 8–9, 11; Order at 2.  Accordingly, this disclosure did not "reveal new information to the market that ha[d] not yet been incorporated into the price."  *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020).  Therefore, Plaintiff fails to plead loss causation.[11]

### III.    CONCLUSION

Plaintiff added no new facts in the SAC that cure the defects in the prior complaint and does not even attempt to argue that it could further bolster the still deficient allegations if further leave to amend were granted.  Accordingly, the SAC should be dismissed in its entirety and with prejudice.

DATED: December 9, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Jessica Valenzuela*
        Jessica Valenzuela

*Attorneys for Defendants Amplitude, Inc., Spenser Skates, and Hoang Vuong*

---

[11] The Section 20(a) claim fails because Plaintiff fails to adequately plead a primary violation of Section 10(b).  Mot. at 15, n.9.